Edward W. BERGQUIST, as Trustee for the heirs of Erik Henry Boteus, decedent, Respondent,

v.

MEDTRONIC, INC., et al., petitioners, Appellants.

No. C6–84–1243.

Supreme Court of Minnesota.

Jan. 3, 1986.

C. Alan Cunningham, Scott W. Johnson, Minneapolis, for appellants.

Bradlee Karan, Minneapolis, for respondent.

YETKA, Justice.

On April 19, 1983, respondent Edward W. Bergquist, as trustee for the heirs of Erik Henry Boteus, filed a complaint in Hennepin County District Court against appellants Medtronic, Inc., and Medtronic Blood Systems, Inc. Defendants filed an answer on June 2, 1983, denying all of plaintiff's allegations and affirmatively alleging that venue was improper. On February 22, 1984, defendants moved for dismissal on the grounds of forum non conveniens. The district court denied the motion on March 12, 1984, but on defendants' motion for reconsideration, the court granted the motion and dismissed the action on April 16, 1984. Bergquist appealed to the Minnesota Court of Appeals, which reversed the district court on April 2, 1985, 364 N.W.2d 887. Medtronic, Inc., and Medtronic Blood Systems, Inc., petitioned this court for further review on April 8, 1985, and the court granted the motion on June 14, 1985. We reverse.

This wrongful death action was brought in Hennepin County District Court by respondent Edward W. Bergquist as trustee for the heirs of Erik Henry Boteus against Medtronic, Inc., and its subsidiary, Medtronic Blood Systems, Inc., Minnesota corporations with their principal places of business in Minnesota[1] (hereinafter jointly referred to as Medtronic). Boteus was a 55-year-old resident and citizen of Sweden and executive of a Swedish transportation company who underwent heart surgery in the Sahlgrenska Hospital in Gothenburg, Sweden, on April 13, 1981.[2] The physicians and hospital personnel attending Boteus were all Swedish citizens and hospital records concerning the operation remain in Sweden. The surgery involved implantation of a 29 mm. prosthetic aortic valve designed, manufactured and distributed by Medtronic. Boteus died of cardiac arrest on April 14, 1981. Bergquist maintains that a moving part of the valve, the occular disc, fractured and chipped, causing the valve to malfunction and Boteus to die.

Bergquist filed a complaint in the Hennepin County District Court on April 19, 1984, alleging that Medtronic was liable for the wrongful death of Boteus on strict liability, breach of warranty, and negligence grounds. Medtronic made a general denial and affirmatively alleged that the risk was on the buyer, that any malfunction was caused by third parties, that Swedish law governed the case, and that venue was improper.[3]

On February 22, 1984, Medtronic moved for dismissal on forum non conveniens grounds. Medtronic also submitted an affidavit of a Swedish lawyer stating that Sweden was an alternative forum in which the defendants would be subject to involuntary service. On March 9, 1984, the district court denied the motion, finding that Medtronic failed to meet the burden of proof set forth by this court in *Hague v. Allstate Insurance Co.*, 289 N.W.2d 43 (Minn.1978), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), *reh'g denied*, 450 U.S. 971, 101 S.Ct. 1494, 67 L.Ed.2d 623 (1981). The court based its ruling on Medtronic's failure to show that it intended to call Swedish witnesses or had difficulty obtaining evidence from Sweden. Medtronic appealed the order to the Minnesota Court of Appeals and also moved the district court for reconsideration.

In support of the motion to reconsider, Medtronic's attorney submitted an affidavit stating that the defense was having difficulty obtaining cooperation from Swedish physicians and hospital personnel and requesting the production of documents now in Sweden. He further stated that the district court lacked jurisdiction to compel the appearance of these witnesses or the production of the documents. On April 5, 1984, the district court heard the motion to reconsider. At the hearing, the court granted the request of Bergquist's counsel to submit opposing affidavits. Bergquist then submitted a personal affidavit and affidavits from his attorneys maintaining that there had been no demand made of them for documents and that records requested would be delivered to Medtronic in the normal course of discovery. Bergquist also maintained that Medtronic had improperly attempted to obtain documents from the Sahlgrenska Hospital without the authorization of the Boteus family.

On April 17, 1984, the district court vacated its March 12 order and granted Medtronic's motion to dismiss on forum non conveniens grounds. The court heard and considered the appropriate public and pri-

---

1. Bergquist is a Minnesota attorney appointed by the district court as trustee for the heirs of Boteus. Boteus' heirs are his wife, Inger, and his two adult sons, Jan Gunnar and Sture Henry, all residents and citizens of Sweden.

2. The facts in this case are taken from the pleadings and other documents filed with the district court.

3. The parties agreed to begin discovery on May 9, 1983, at which time Medtronic requested the heart valve and other relevant reports and information, and Bergquist allegedly made available to Medtronic a report on the testing of the valve. On September 7, 1983, the parties agreed to postpone any further discovery until resolution of the venue issue.

vate interest factors as set forth by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and adopted by this court in *Hague,* 289 N.W.2d at 46. Especially important in the district court's analysis was the affidavit of Medtronic's attorney concerning the evidentiary problems faced by the defense if the suit were litigated in Minnesota.

The court of appeals vacated Medtronic's appeal on April 30, 1984. Bergquist then appealed from the district court dismissal on July 11, 1984.

On April 2, 1985, the court of appeals reversed the district court, finding the dismissal on grounds of forum non conveniens was prematurely granted. *Bergquist v. Medtronic, Inc.,* 364 N.W.2d 887 (Minn.Ct. App.1985). The court analyzed the motion under the *Gulf Oil* public and private interest factors. Operating with the premise that a plaintiff's choice of forum should rarely be disturbed unless it is to "vex" or "harass" the defendant, the court reweighed the *Gulf Oil* private and public interest factors in forum non conveniens analysis and found that they did not rebut the presumption against dismissal. The court stated that there was no proof that the Swedish witnesses were uncooperative or that depositions could not be taken. Boteus' status as a foreign citizen did not affect the court's analysis since it found that the federal rule distinguishing foreign from domestic plaintiffs set forth in *Piper*

*Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), had not been adopted in Minnesota. Therefore, the court ruled that the dismissal had been prematurely granted and reversed the district court. The court further held, however, that the motion to dismiss on grounds of forum non conveniens could be renewed by Medtronic if it were demonstrated that the Swedish witnesses were uncooperative or unavailable.

Medtronic petitioned this court for further review of the court of appeals decision, which the court granted on June 14, 1985.

The issues raised on appeal are:

1. Did the court of appeals apply the appropriate law?
2. Was the court of appeals correct in reversing the district court?

Minnesota forum non conveniens law is patterned after the doctrine set forth by the United States Supreme Court in *Gulf Oil.* We explicitly followed *Gulf Oil* in *Hague,* 289 N.W.2d 43.

■■■ These cases establish a strong presumption in favor of the plaintiff's choice of forum. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843; *Hague,* 289 N.W.2d at 46. The trial court must balance a series of public and private interest factors in determining whether the defendant has successfully rebutted the presumption that the plaintiff's choice of forum will not be disturbed.[4] This court will not reverse the

---

4. The private interest factors are as follows: An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843, *quoted in Hague,* 287 N.W.2d at 46. The trial court must also consider the following public interest factors:

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

decision of the trial court unless it finds that there has been an abuse of discretion. *See In re Florance,* 360 N.W.2d 626 (Minn. 1985).

In reviewing the trial court's forum non conveniens dismissal, the court of appeals declined to follow *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, a more recent U.S. Supreme Court decision establishing a lesser degree of deference in the federal courts to a foreign plaintiff's choice of forum. The court of appeals did not follow *Piper* since it found that the case had not been adopted by this court. While it is true that we have not heretofore followed *Piper,* it is simply because the precise issue has not been before the court.[5] We now hold that we will adopt the *Piper* rule in Minnesota forum non conveniens analysis.

■ In *Piper,* the United States Supreme Court held that the presumption given a plaintiff's choice of forum should apply with "less than maximum force" when the plaintiff is foreign. *Piper,* 454 U.S. at 261, 102 S.Ct. at 268. The Court reasoned:

When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Id.* at 255–56, 102 S.Ct. at 265–66. We agree. Why should the United States taxpayers, or taxpayers of Minnesota in the present case, be presumed to pay for the costs of trial for a plaintiff who is a citizen of a foreign nation; who has a remedy in his own country; and whose defendant con-

sents to being sued in the foreign country? Sweden is an enlightened, progressive nation; plaintiff apparently has some remedy in that nation; and the rights of its own citizens are better settled there under its own laws. As the United States Supreme Court held in *Piper,* the possibility that the substantive law of the alternative forum is less favorable is not a relevant consideration in forum non conveniens analysis:

[I]f conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless. Jurisdiction and venue requirements are often easily satisfied. As a result, many plaintiffs are able to choose from among several forums. Ordinarily, these plaintiffs will select that forum whose choice-of-law rules are most advantageous. Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper.

*Id.* at 250, 102 S.Ct. at 263. Differences in the substantive law will enter into the court's analysis only if there is absolutely no effective remedy in the alternative forum:

We do not hold that the possibility of an unfavorable change in law should *never* be a relevant consideration in a *forum non conveniens* inquiry. Of course, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice.

---

*Id.* 330 U.S. at 508–09, 67 S.Ct. at 843; *see, e.g., Bongards' Creameries v. Alfa-Laval, Inc.,* 339 N.W.2d 561, 562–63 (Minn.1983); *In re Cary,* 313 N.W.2d 625, 628 (Minn.1981) (cases in which this court has itself balanced public interest factors such as administrative difficulties and the local interest in the action).

5. The cases cited by the court of appeals did not present this court with a clear opportunity to rule on the issue. The *Florance* case, 360

N.W.2d 626, dealt only with U.S. citizens of different states and not with foreign plaintiffs. *Bongards' Creameries,* 339 N.W.2d 561, involved a foreign party, originally a *defendant,* who had settled with the Minnesota plaintiff and was attempting to maintain its action against an impleaded foreign third-party defendant. *In re Cary,* 313 N.W.2d 625, did not involve foreign parties.

*Id.* at 254, 102 S.Ct. at 265. *See also Hague*, 289 N.W.2d at 46. By adopting the *Piper* rule, this court has even greater cause to recognize the discretion of the trial court in dismissing on forum non conveniens grounds a suit brought by a foreign plaintiff.

■ In reaching their decisions, both the trial court and the court of appeals considered private interest factors pertinent to the case such as the ease of access to sources of proof, availability of compulsory processes for unwilling witnesses and the cost of obtaining willing witnesses. Sources of proof are located both in Minnesota and in Sweden. While the valve was designed, manufactured, and tested in Minnesota, it was inserted by surgery in Sweden. The allegedly defective valve was subjected to extensive examination at Chalmers Technical Institute in Sweden, and the plaintiff's attorney at oral argument admitted its only expert witness may be one from Chalmers Institute. While the plaintiff argues that the bulk of their documentary evidence and most of their witnesses are in this state, the defense faces the same situation in finding witnesses, compelling unwilling witnesses to testify, and obtaining documentary evidence if the trial is held in Minnesota.[6]

Both courts heard and considered the public interest factors such as administrative difficulties, jury duty imposed upon people of a community without a close relationship to the litigation, and the local interest in having local controversies decided at home. Here, the defendants are residents of Minnesota and are willing to defend in Sweden. The Minnesota court lacks power to compel attendance of witnesses from Sweden, and the case could prove to be complex, lengthy and very expensive to litigate. Finally, the sole nexus between the litigation and the forum is that the defendant is a Minnesota corporation.

■ In weighing both private and public factors, the most that can be said in favor of plaintiff's position is that the factors are equal. However, in light of the *Piper* rule, the discretionary right of a trial judge to dismiss a suit brought in a state court by a foreign plaintiff is further strengthened. The traditional presumption that the plaintiff's choice of forum should not be disturbed will not be given full effect when the plaintiff is foreign and since we find that the trial court did not abuse its discretion in dismissing the case on forum non conveniens grounds, the decision of the court of appeals is reversed. Our decision is conditioned, however, on the following: That plaintiff, as counsel for both sides allege, actually has a cause of action that may be brought in Sweden; that the defendants will waive any objections to the jurisdiction of the Swedish courts and waive any statute of limitations that may or may not be imposed on plaintiff bringing his lawsuit in Sweden; and that there is no other procedural impediment to full litigation under the substantive law of Sweden. If these conditions are not met, plaintiff

---

**6.** The affidavit of the defense attorney states:

3. On information and belief, certain physicians, nurses and staff of Sahlgrenska Hospital are witnesses with knowledge of facts crucial to defendants' defense of this action.

4. On information and belief, Sahlgrenska Hospital medical personnel have refused to provide defendants with detailed information regarding the incident giving rise to this action, including the identity of the medical personnel who performed the surgery in which the device in issue was implanted in plaintiff's decedent.

5. On information and belief, certain Sahlgrenska Hospital personnel have in their custody records crucial to defendants' defense of this action.

6. This Court lacks power to compel the attendance of Swedish witnesses with knowledge of facts crucial to defendants' defense of this action.

7. This Court lacks power to compel the attendance of Swedish records custodians maintaining documents crucial to defendants' defense of this action.

8. On information and belief, this Court lacks personal jurisdiction over all potential third-party defendants, including the physicians and other medical personnel who performed the surgery in which the device in issue was implanted in plaintiff's decedent.

will be free to recommence his action in the Minnesota courts.

Reversed.

PETERSON, Justice, took no part in the consideration or decision of this matter.