**PAULOWNIA PLANTATIONS DE PANAMA CORPORATION,**
Appellant,

v.

**Ambrose Harry RAJAMANNAN, et al., Respondents.**

No. A07–2199.

Court of Appeals of Minnesota.

Dec. 9, 2008.

William F. Mohrman, Erick G. Kaardal, Tona T. Dove, Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant.

Gary Hansen, Aaron Mills Scott, Oppenheimer Wolff & Donnelly, L.L.P., Minneapolis, MN, for respondents.

Considered and decided by STONEBURNER, Presiding Judge; SHUMAKER, Judge; and STAUBER, Judge.

## OPINION

STAUBER, Judge.

In this appeal from the district court's dismissal of appellant's claims on the basis

of forum non conveniens, appellant argues that the district court erred in granting respondents' motion to dismiss because Panamanian law clearly states that Panama is not an available forum in this case, and respondents presented no evidence to the contrary. Appellant also contends that the public- and private-interest factors weigh heavily in its favor. Because Panama is not an available forum, we reverse and remand.

## FACTS

Respondent Dr. Ambrose Rajamannan (Rajamannan) was born in Sri Lanka and presently resides in Minnesota. In 1976, Rajamannan started respondent Agro–K Corporation (Agro–K), a corporation that primarily markets foliar fertilizer products around the world. As part of marketing for Agro–K products globally, Rajamannan often traveled to Panama, where he became interested in the commercial possibilities of growing paulownia trees.[1] In an effort to pursue this interest, Rajamannan formed two Panamanian corporations, respondents Perla Verde Service Corporation (PVSC), and Perla Verde S.A. (PVSA).

In the late 1990s, Robert Shepherd, a resident and citizen of Australia, began discussing with Rajamannan the attributes of paulownia trees and the prospects for growing them commercially in Panama. In October 1998, Shepherd met with Rajamannan in Panama, where Shepherd visited two operations pertaining to the growth of the paulownia tree. Shortly thereafter, Shepherd recruited a group of investors who formed appellant Paulownia Plantations de Panama Corporation (PPP). PPP was incorporated in the Republic of Vanuatu and was created for the purpose of investing in Rajamannan's paulownia tree lumber operations in Panama.

On March 12, 1999, PPP entered into two contracts with PVSC, a license to occupy land, and the paulownia and black pepper planting and management contract (the "management contract"). Under the terms of the management contract, PPP was required to pay fees to PVSC, generally calculated on a per-acre basis. The management contract also required PVSC to (a) obtain a lease on land on which to grow the paulownia trees; (b) clear up to 500 acres for planting; (c) purchase and plant 200 paulownia trees and 200 pepper plants per acre; and (d) care for and fertilize the paulownia trees, control insects, and control weeds for ten years.

In light of safety concerns regarding the security and accessibility of funds, the parties agreed that wire transfers from PPP would be sent to Agro–K's bank account at TCF Bank in Minneapolis and then transferred to Panama as needed, rather than leaving large amounts of cash in accounts in Panama. According to Shepherd, Rajamannan represented that after the fees were transferred to Agro–K's account, the fees would, in turn, be transferred to PVSC or persons or entities in Panama related to the project. Between 1998 and 2002, PPP transferred between $898,831.26 and $1,319,823 to Agro–K pursuant to the contracts between PPP and PVSC.[2]

By 2002, the investment operation had allegedly failed, and operations pertaining

---

1. The paulownia tree has several commercial advantages over other species of trees because (1) paulownia trees grow very fast and can be harvested and dried quickly; and (2) paulownia lumber is highly regarded for commercial uses in burgeoning Asian markets such as China.

2. Although appellant claims that $1,319,823 was actually transferred to Agro–K, respondents only admit to $898,831.26.

to the growth of the paulownia were eventually abandoned. Appellant subsequently brought this action, asserting claims for, among other things, fraud, unjust enrichment, conversion, and breach of contract. Appellant claimed that the in funds transferred from PPP to Agro–K were never used for their intended purposes, but were diverted by Rajamannan and used for purposes unrelated to the paulownia lumber operations, such as payment of Rajamannan's other debts in Panama, and Rajamannan's purchase of an expensive seaside home in Panama.

Respondents answered, asserting various counterclaims and the defense of forum non conveniens, claiming that the action should be tried in Panama. Respondents claim that the contract between PPP and PVSC was not an investment vehicle, but a management contract that does not specify the disposition of the funds paid by PPP. Respondents further claimed that any funds wired to Agro–K were transferred to the Panamanian companies handling funds for PVSC in Panama.

In May 2007, respondents moved to dismiss appellant's complaint in its entirety under the doctrine of forum non conveniens. The district court granted the motion to dismiss, holding that "[P]anama is both 'available' and 'adequate' as an alternative forum within the meaning of the law," and that "under the circumstances of this case, it is more appropriate and equitable for [appellant] to bring this action in Panama." The district court also conditioned the dismissal upon "[t]he courts of Panama ... accept[ing] jurisdiction" of the matter. This appeal followed.

## ISSUE

Did the district court err in granting respondents' motion to dismiss under the doctrine of forum non conveniens?

## ANALYSIS

Dismissal of a case on the grounds of forum non conveniens may be appropriate when "the exercise of personal jurisdiction imposes a hardship that does not rise to the level of a due process violation." *Rykoff–Sexton, Inc. v. Am. Appraisal Assocs., Inc.*, 469 N.W.2d 88, 91 (Minn.1991). The district court exercises broad discretion in deciding whether to dismiss an action on the grounds of forum non conveniens, and this court will not reverse the district court's decision absent an abuse of discretion. *Bergquist v. Medtronic, Inc.*, 379 N.W.2d 508, 511–12 (Minn.1986).

In *Bergquist*, the Minnesota Supreme Court adopted the rule set forth in the United States Supreme Court case of *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), for Minnesota forum non conveniens cases. *Id.* at 512. In *Piper Aircraft*, the Supreme Court stated "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." 454 U.S. at 257, 102 S.Ct. at 266. Although there is a "strong presumption" in favor of the plaintiff's choice of forum, this presumption may be rebutted if the factors set forth in *Piper* indicate that another forum would be more equitable or more convenient. *Bergquist*, 379 N.W.2d at 511.

Appellant argues that prior to balancing the public- and private-interest factors, the district court conducting a forum non conveniens analysis must first determine whether the alternative forum is both "available" and "adequate." Appellant asserts that if the alternative forum is not "available" and "adequate," the inquiry stops, and no balancing of the public- and

private-interest factors is necessary because the motion fails.

■ There are no Minnesota cases expressly adopting the "available and adequate" test as part of the forum non conveniens analysis. But in *Piper,* the United States Supreme Court stated in a footnote that:

At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be justified when the defendant is "amenable to process" in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied.

454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22 (citation omitted). In *Bergquist,* the Minnesota Supreme Court announced its adherence to the rule announced in *Piper.* 379 N.W.2d at 512 (holding that the supreme court will "adopt the *Piper* rule in Minnesota forum non conveniens analysis" that "the presumption given a plaintiff's choice of forum should apply with 'less maximum force' when the plaintiff is foreign"). Moreover, a determination of the availability and adequacy of the alternative forum is implicit in the *Hague* decision, which states that Minnesota courts could decline jurisdiction where "it fairly appears that it would be more equitable to have the case tried in another *available* court of competent jurisdiction." *Hague v. Allstate Ins. Co.,* 289 N.W.2d 43, 45 (Minn.1978) (emphasis added). Thus, we

conclude that before engaging in the balancing of the public- and private-interest factors, the first step in a forum non conveniens analysis is a determination of whether the alternative forum is "available and adequate."

■ "The doctrine of forum non conveniens presupposes that an adequate alternative forum is available to hear the case." *Reid–Walen v. Hansen,* 933 F.2d 1390, 1393 n. 2 (8th Cir.1991). But a foreign forum is not available unless all parties can come within the jurisdiction of that forum. *Id.* A forum is adequate when the parties will not be deprived of all remedies or treated unfairly. *Piper,* 454 U.S. at 255, 102 S.Ct. at 265. "[T]he burden of establishing whether an alternative forum exists is not a heavy one." *Banco Latino v. Gomez Lopez,* 17 F.Supp.2d 1327, 1331 (S.D.Fla.1998).

■ Appellant argues that the district court abused its discretion in granting respondents' motion to dismiss under the doctrine of forum non conveniens because Panama is not an available forum. To support its claim, appellant cites Panamanian law, which states:

In those processes that are being dealt with in this Chapter, national judges are not competent if the claim or action attempted to be brought in the country has been previously rejected or denied by a foreign judge who applies the forum non conveniens. In these cases, national judges shall reject or inhibit themselves from hearing the claim or action for reasons of constitutional order or preventive competence.[3]

---

**3.** We note that, at the time this matter was before the district court, Article 1421–J stated as follows: "Lawsuits filed in the country as a consequence of a forum non convenience *judgment* from a foreign court, do not generate national jurisdiction. Accordingly, they

must be rejected sua sponte for lack of jurisdiction because of constitutional reasons or due to the rules of preemptive jurisdiction." Còdigo Civil [Còd. Civ.] art. 1421–J (emphasis added). In February 2008, after this appeal had been filed, the Panamanian National As-

Còdigo Civil [Còd. Civ.] art. 1421–J (Pan.). Appellant also presented the affidavit of Henry Dahl, an expert on Latin American law. Dahl claimed that under Article 1421–J, Panamanian courts would reject the case sua sponte if this case was dismissed for forum non conveniens.

Respondents argue that notwithstanding the language contained in Article 1421–J, the district court correctly decided the issue of pre-emptive jurisdiction by conditioning the dismissal on Panama's acceptance of jurisdiction and allowing appellant to re-open the file in Minnesota if Panama declines jurisdiction. We disagree. Minnesota law provides:

> The existence and the tenor or effect of all foreign laws may be proved as facts by parol evidence; but, if it appears that the law in question is contained in a written statute or code, the court may, in its discretion, reject any evidence of such law which is not accompanied by a copy thereof.

Minn.Stat. § 599.01 (2006). The law of a jurisdiction other than the common law and statutes of every state, territory, and other jurisdiction of the United States, "shall be an issue for the court." Minn. Stat. § 599.08 (2006).

Here, the language of Article 1421–J unambiguously states that if a claim has been previously dismissed for forum non conveniens, the courts of Panama "shall" not hear the claim or action. The constitutionality of this provision was challenged by the Panamanian Attorney General, and although initially abrogated, the provision was ultimately upheld as evidenced by Law No. 38. The procedural history of Article 1421–J further supports the proposition that Panama is not an available and adequate forum because it leaves little

doubt that the article is considered constitutional by the Panamanian judiciary. Respondents have failed to produce any evidence demonstrating that Article 1421–J would not apply to the present action. We conclude that under the plain language of Article 1421–J, Panama is not an available forum in this action.

Respondents also contend that Article 1421–J will not bar litigation of this case in Panama because Panama's policy behind its pre-emptive jurisdiction law was to protect its own citizens from being deprived of their chosen forum. Respondents argue that because appellant is not Panamanian, but instead consists of foreign individuals and a foreign corporation, the Panamanian courts will accept jurisdiction to hear the matter since Article 1421–J was not designed to protect appellant. We disagree. Respondents' argument is purely speculative and ignores the plain language of the statute. Moreover, there is nothing in the record supporting the assertion that because appellant is not a Panamanian resident, the Panamanian courts will decide to ignore the plain language of Article 1421–J and accept jurisdiction over the matter.

Respondents further argue that Article 1421–J does not apply because the text of Article 1421–J refers to foreign judgments. Respondents argue that because a dismissal for forum non conveniens is not a "judgment," Article 1421–J does not apply to the district court's dismissal for forum non conveniens.

Respondents' argument is without merit. Although the original version of Article 1421–J contained the word "judgment," Article 1421–J, as reinstated by Law No. 38, does not use the word "judgment." Thus, even if respondents are correct that

sembly signed into law, Law No. 19, which abrogated Article 1421–J. However, in May 2008, the Panamanian National Assembly

passed Law No. 38, which reinstated Article 1421–J, but slightly modified the language of the statute.

a dismissal for forum non conveniens is not a "judgment," this fact has no bearing since Article 1421–J no longer refers to foreign "judgments." Instead, Article 1421–J simply states that the Panamanian courts will not hear cases dismissed in other jurisdictions for forum non conveniens. Accordingly, the district court erred in dismissing appellant's claims for forum non conveniens because Panama is not an available forum under Article 1421–J. Because Panama is not an available forum, the inquiry ends, and we need not address the public- and private-interest factors.[4]

## DECISION

Before engaging in the balancing of the public- and private-interest factors, the first step in a forum non conveniens analysis requires a determination of whether the alternative forum is available and adequate. Based on the plain language of Article 1421–J, Panama is not an available forum in this action. Therefore, we reverse the district court's decision dismissing appellant's action for forum non conveniens and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**

---

4. We note that the district court's order conditioning the dismissal upon "[t]he courts of Panama ... accept[ing] jurisdiction" in the matter, thereby forcing appellant to petition Panamanian courts to hear or consider the case, *may* have been inappropriate and an abuse of discretion.