PAULOWNIA PLANTATIONS DE
PANAMA CORPORATION,
Respondent,

v.

Ambrose Harry RAJAMANNAN,
et al., Appellants.

No. A07–2199.

Supreme Court of Minnesota.

Nov. 5, 2009.

William F. Mohrman, Erick G. Kaardal, Mohrman & Kaardal, P.A., Minneapolis, MN, for respondent.

Gary Hansen, Aaron Mills Scott, Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, for appellants.

## OPINION

MEYER, Justice.

Paulownia Plantations de Panama Corporation (PPP) invested in appellant Ambrose Harry Rajamannan's plan to commercially grow trees in Panama. After the tree plantations failed, PPP brought suit in Minnesota, where Rajamannan resides and where PPP wired the majority of its investment money. The district court issued a forum non conveniens dismissal on the condition that Panama would accept jurisdiction of the case. The court of appeals reversed, concluding that a Panamanian "blocking statute" deprived Panama courts of jurisdiction when a case is dismissed by a foreign court for forum non conveniens. We reverse.

Rajamannan and his wife are residents of Anoka County, Minnesota. In 1976, Rajamannan founded Agro–K Corporation, a company that markets fertilizer products internationally. During trips to Panama on behalf of Agro–K Corporation, Rajamannan became interested in commercially growing paulownia trees; these trees originated in Asia and are known for a fast growth rate and lightweight wood. To further this interest, Rajamannan formed two Panamanian corporations: Perla Verde Service Corporation (PVSC) and Perla Verde S.A.

In 1997, Rajamannan discussed commercial paulownia tree operations with Robert Shepherd, a resident and citizen of Australia. In October 1998 Shepherd and Rajamannan visited paulownia tree operations in Panama. PPP alleged in its complaint that Rajamannan claimed his specialized knowledge in agriculture and fertilizers could help create a profitable paulownia tree plantation in Panama. Shepherd and other Australian investors formed PPP to invest in Rajamannan's plantation. PPP is incorporated in the Republic of Vanuatu with its principal place of business located in Port Vila, Vanuatu.[1]

On March 12, 1999, PPP entered into two contracts with PVSC—a license to occupy land and a management contract. The contracts required PVSC to (1) obtain a lease on land to grow the trees; (2) clear acreage for paulownia trees; (3) purchase and plant paulownia trees and pepper plants,[2] and (4) care for the trees and maintain the plantation for at least 10 years. The parties agreed that payments by PPP under the management contract would be sent by wire transfer to Agro–K's Minnesota bank account. Agro–K would then disperse the funds to PVSC. PPP alleged in its complaint that few, if any, of the funds transferred to the Agro–K account were ultimately received by PVSC.

The plantation eventually failed, and by May 2002 Rajamannan was no longer managing the tree or pepper crops. On August 4, 2005, PPP brought suit in Anoka County District Court against Rajamannan, his wife, and the three associated corporations: Agro–K, PVSC, and Perla Verde S.A.[3] PPP alleged breach of contract, fraud, unjust enrichment, and conversion, claiming that the investment funds deposited with Agro–K were used by Rajamannan and his wife for purposes unrelated to the plantation operations. More specifically, the complaint alleged that the crops failed because PVSC failed to properly manage and maintain the farming operations. On October 14, 2005, defendants filed their answers, and each asserted the defense of forum non conveniens. During the next 20 months, the parties conducted discovery, made joinder motions, took numerous depositions, and contemplated mediation and other ADR. Rajamannan obtained other counsel in February 2007.

On May 11, 2007, defendants moved to dismiss for forum non conveniens, asserting that Panama is a more convenient forum for the litigation. As part of their motion, the defendants expressly consented to jurisdiction in Panama and waived any defenses based on a lack of jurisdiction. In support of the motion, Humberto Enrique Iglesias[4] submitted an affidavit in which he concluded "that this case could have been brought in Panama by [PPP] against all of the defendants." His conclusion was based on the fact that the contracts were signed and notarized in Panama, the services were performed in Panama, and the damages accrued in Panama. He concluded there was "no bar to

1. The Republic of Vanuatu is an island nation located in the South Pacific Ocean.

2. According to the complaint, pepper plants could be attached to the paulownia trees and begin yielding marketable pepper crops within four years of being planted.

3. In this opinion, "defendants" references: Ambrose Harry Rajamannan, Concie Rajamannan (Rajamannan's wife), Agro–K, PVSC, and Perla Verde S.A. "Plaintiff" references PPP.

4. Iglesias has been a Panamanian attorney since 1997. Iglesias earned an L.L.M. from Notre Dame, where he wrote a thesis on forum non conveniens in Panama.

pursuing a remedy under the substantive law of the Republic [of] Panama."

On May 31, 2007, PPP moved for summary judgment. Shortly thereafter, PPP submitted a memorandum and affidavit of Henry Saint Dahl in support of its motion.[5] In his affidavit, Dahl opined that if the suit were dismissed for forum non conveniens and re-filed in Panama, the Panamanian courts would dismiss it for lack of jurisdiction based on two laws: Panamanian statute Article 1421–J and "preemptive jurisdiction." A brief discussion of these two laws is helpful to an understanding of our decision.

The Panamanian National Assembly enacted Panamanian Assembly Law No. 32, chapter 4, § 2, article 1421–J on August 1, 2006. Article 1421–J stated:

> Lawsuits filed in the country as a consequence of a forum non convenience judgment from a foreign court, do not generate national jurisdiction. Accordingly, they must be rejected sua sponte for lack of jurisdiction because of consti-

tutional reasons or due to the rules of preemptive jurisdiction.

Article 1421–J was set to become "effective from its promulgation." The article was not in effect when PPP originally filed its complaint, but it was in effect when the district court considered the forum non conveniens motion in May 2007.[6]

Article 1421–J is similar to statutes from other Latin America countries referred to as "blocking statutes." These statutes extinguish jurisdiction in the Latin American country with respect to claims filed first in a foreign court—most often the United States—that are dismissed by the foreign court for forum non conveniens. Some commentators theorize that Latin American countries enacted these statutes when increased globalization opened multinational corporations to liability from Latin American plaintiffs, but forum non conveniens dismissals were barring these plaintiffs from access to U.S. courts.[7]

Dahl also referenced the common law doctrine of "preemptive jurisdiction" in his affidavit supporting PPP's motion for sum-

---

**5.** Dahl is a practicing attorney in the United States; he is also licensed in Buenos Aires, Argentina, where he received most of his legal education. Dahl has postgraduate degrees in comparative law and has written on inter-American legal issues, including the interaction of forum non conveniens and Latin American legal systems. Dahl also wrote the Latin American Model Act for International Litigation, from which the Panamanian statute at issue in this case, Article 1421–J, was copied.

**6.** Article 1421–J was abrogated by Law No. 19 on February 18, 2008, after this case had been appealed to the court of appeals. Article 1421–J was then reinstated on June 26, 2008, to read:
   In those processes that are being dealt with in this Chapter, national judges are not competent if the claim or the action attempted to be brought in the country has been previously rejected or denied by a foreign judge who applies the forum non

conveniens. In these cases, national judges shall reject or inhibit themselves from hearing the claim or action for reasons of constitutional order or preventive competence. The 2008 version was also set to "start in force and effect as of its promulgation." The statutes are substantially similar, but we rely on the 2006 version that was before the district court, due to our deferential standard of review.

**7.** *See, e.g.,* Walter W. Heiser, *Forum Non Conveniens and Retaliatory Legislation: The Impact on the Available Alternative Forum Inquiry and on the Desirability of Forum Non Conveniens as a Defense Tactic*, 56 U. Kan. L.Rev. 609, 610 (2008); Dante Figueroa, *Conflicts of Jurisdiction Between the United States and Latin America in the Context of Forum Non Conveniens Dismissals*, 37 U. Miami Inter–Am. L.Rev. 119, 121–24, 133 (2005).

mary judgment. Dahl stated that preemptive jurisdiction is a well-defined concept, grounded in Panama's judicial code, establishing that once jurisdiction accrues, it cannot be altered. Article 259 of the judicial code states that judges initially take jurisdiction in a "preemptive way"; further, Article 238 states that "[p]reemptive jurisdiction is the one that belongs to two or more courts, so that the one that hears the case first, preempts or prevents the others from hearing the same." Dahl cited to Panama cases where some courts in Panama have dismissed lawsuits on the principle of preemptive jurisdiction because the lawsuits had been filed in the United States but then dismissed for forum non conveniens. He concluded that the doctrine of preemptive jurisdiction would bar access to Panamanian courts.

The district court below considered Dahl's affidavit but nevertheless concluded that neither Article 1421–J nor preemptive jurisdiction deprived Panama of jurisdiction. The district court therefore granted defendants' motion to dismiss for forum non conveniens, conditioned upon: (1) the consent of the defendants to Panamanian jurisdiction; (2) acceptance of jurisdiction by Panama; (3) waiver by the defendants of any defenses based upon statutes of limitation; and (4) agreement of the defendants to satisfy any resulting Panamanian judgment. The district court order stated that if the defendants failed to comply with any of these conditions, or Panama refused jurisdiction, PPP could re-open the file in Anoka County District Court.

The court of appeals reversed, concluding that Panama is not an available forum because the language of Article 1421–J "unambiguously" says that claims previously dismissed for forum non conveniens will not be heard by Panama. *Paulownia Plantations de Panama Corp. v. Rajamannan*, 757 N.W.2d 903, 908–09 (Minn.

App.2008). We granted defendants' petition for review.

**I.**

The doctrine of forum non conveniens allows a district court with jurisdiction over the subject matter and the parties discretion to decline jurisdiction over a cause of action when another forum would be more convenient for the parties, the witnesses, and the court. *Kennecott Holdings Corp. v. Liberty Mut. Ins. Co.*, 578 N.W.2d 358, 360 (Minn.1998); *Bergquist v. Medtronic, Inc.*, 379 N.W.2d 508, 511–12 (Minn.1986). A forum non conveniens determination "is committed to the sound discretion of the trial court," to which substantial deference is given. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Bergquist*, 379 N.W.2d at 511–12. We will not reverse a forum non conveniens dismissal by the district court unless there has been an abuse of discretion. *Bergquist*, 379 N.W.2d at 511–12. A district court abuses its discretion in the context of forum non conveniens when the court makes an erroneous legal conclusion or a clearly erroneous factual conclusion. *See Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001).

The first step in a forum non conveniens analysis is for the district court to establish the existence of an available and adequate alternative forum. *See Piper*, 454 U.S. at 255 n. 22, 102 S.Ct. 252; *Bergquist*, 379 N.W.2d at 512 (adopting the *Piper* rule in Minnesota forum non conveniens analysis); *see also Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 45 (Minn. 1978) (stating that jurisdiction may be declined under forum non conveniens "when it fairly appears that it would be more equitable to have the case tried in another *available* court of competent jurisdiction"

(emphasis added)). A forum is "available" when the foreign court has jurisdiction over the case and the parties. *See, e.g., Piper,* 454 U.S. at 242, 255 n. 22, 102 S.Ct. 252; *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 221 (5th Cir.2000). "Adequacy" encompasses whether the party has an effective remedy in the alternative forum. *Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. 252 (stating that in rare circumstances, the other forum may not be an adequate alternative, such as where the forum does not permit litigation of the dispute); *Bergquist,* 379 N.W.2d at 512 (stating that only if there is absolutely no effective remedy in the alternative forum will differences in the substantive law enter into the court's analysis.)

■ The district court may dismiss on forum non conveniens grounds even though the adequacy of the foreign forum is not absolutely certain, if the nonmoving party is protected by an order making the dismissal conditional. *See Bank of Credit & Commerce Int'l (Overseas) Ltd.,* 273 F.3d at 247–48 (holding that a district court may conditionally dismiss a case if, after engaging in a full analysis of relevant issues of foreign law, the court asserts its "justifiable belief" in the existence of an adequate alternative forum).

*Availability of Panamanian Forum*

■ The district court analyzed the following factors in support of its conclusion that Panama is available as an alternative forum: the text of Article 1421–J; case reports of decisions from other U.S. courts interpreting the meaning of Article 1421–J and the doctrine of preemptive jurisdiction; the expert affidavits of Dahl and Iglesias and the supporting materials attached to those affidavits; the purpose behind Panama's preemptive jurisdiction law (to protect the forum choices of Panamanian plaintiffs); and the Panamanian

law that permits jurisdiction by consent of the defendant. The court concluded that in this case the presumption in favor of plaintiff's choice of forum should receive less deference because the plaintiff is foreign and the defendants are citizens of Panama. The court further concluded that: the defendants are amenable to process in Panama and the action could have been brought there in the first instance; the defendants had agreed to consent to Panamanian jurisdiction and waive all claims of jurisdictional defects, which increased the likelihood that Panama would accept jurisdiction under Panama's jurisdiction by consent law; and Article 1421–J would not definitively apply to the facts of this case because the law is prospective and was enacted after this case was filed. The court concluded that the doctrine of preemptive jurisdiction would likely not be applied by Panama because the purpose of the doctrine, protecting Panamanian citizens, was not served by applying it here (where the plaintiff is a Vanuatuan corporation comprised of Australian citizens).

PPP argues that the district court abused its discretion because the plain language of Article 1421–J prevents a Panamanian court from accepting jurisdiction if a foreign court dismisses on forum non conveniens grounds. PPP argues that Panama courts will apply Article 1421–J as of the time the parties refile this case in Panama, and it will block the court from accepting the case. PPP asserts that even if Panama does not apply Article 1421–J, the Panamanian doctrine of preemptive jurisdiction will prevent Panama from accepting jurisdiction. PPP points to evidence of dismissals of other cases in Panama in which either Article 1421–J or the doctrine of preemptive jurisdiction was applied by Panama. PPP argues that Rajamannan submitted no evidence that the Panama court would accept

jurisdiction, and thus Panama cannot be considered an available forum.

After a careful review of the record and the district court's dismissal, we conclude that the court did not abuse its discretion in deciding that Panama is an available forum. The district court engaged in a comprehensive analysis of Article 1421–J and preemptive jurisdiction and stated its belief that jurisdiction would be available in Panama after a conditional dismissal.[8] *Bank of Credit & Commerce Int'l (Overseas) Ltd.,* 273 F.3d at 247–48 (holding that a district court can conditionally dismiss a case if, after an analysis of relevant foreign law or a close examination of all submissions on the forum's adequacy, the court forms a "justifiable belief" that an alternative forum exists). First, availability of a forum is generally satisfied when defendants are "amenable to process." *See Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. 252. Second, defendants agreed to submit to Panamanian jurisdiction and waive all jurisdictional defenses, which supports a finding that Panama is an available forum. *See Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 75 (2d Cir.2003); *Morales v. Ford Motor Co.,* 313 F.Supp.2d 672, 676 n. 3 (S.D.Tex.2004). Third, the language of Article 1421–J expressly states that it applies prospectively, and thus would not apply to litigation filed before the law was enacted. *See Aguinda v. Texaco, Inc.,* 142 F.Supp.2d 534, 546–47 (S.D.N.Y.2001) (finding it "dubious" that an Ecuadorian law would apply retroactively).

Furthermore, Panama will likely not apply Article 1421–J and the common law doctrine of preemptive jurisdiction because the purpose of those laws would not be served here. The purpose of Article 1421–J and blocking statutes in general is to prevent a foreign court from discriminating against Panamanian citizens in the foreign court by dismissing cases for forum non conveniens. *See* Michael Wallace Gordon, *Forum Non Conveniens Misconstrued: A Response to Henry Saint Dahl,* 38 U. Miami Inter–Am. L.Rev. 141, 148 (2006). PPP's own expert witness, Henry Saint Dahl, explains in a law review article attached to his expert affidavit that blocking statutes are invoked by Latin American governments because of the alleged discriminatory effect that forum non conveniens has on Latin American plaintiffs. Dahl states:

> My country considers that our citizens are treated in a discriminatory way due to the application of the "forum non conveniens" theory. Legal Opinion by the Attorney General of Ecuador. The effects of the mentioned theory cause a procedural discrimination against our citizens abroad because, in practice, it is against the latter that foreign courts close their doors and not against the nationals of the foreign judge. Accordingly, the forum non conveniens theory leads to xenophobic results.

Henry Saint Dahl, *Forum Non Conveniens, Latin America, and Blocking Statutes,* 35 U. Miami Inter–Am. L.Rev. 21, 28 n. 35 (2003) (internal citations omitted).

In this case, there is no discernable potential for discrimination against a Panamanian citizen by a foreign court. A Pan-

---

8. The court of appeals questioned the authority of the district court to make a forum non conveniens dismissal conditioned upon the courts of the foreign forum accepting jurisdiction. *Paulownia Plantations,* 757 N.W.2d at 908 n. 4. Not only is this common practice in other U.S. courts, but we similarly made our decision in *Bergquist* conditioned on Sweden accepting jurisdiction. 379 N.W.2d at 513–14. When the district court is not able to make a definitive finding as to the availability and adequacy of the foreign forum, a conditional dismissal serves to protect the nonmoving party.

amanian plaintiff is not seeking to keep her case in a foreign court. Rather, the party seeking to keep the case in a foreign court is a Vanuatuan corporation comprised of Australian citizens. The Panamanian citizens in the case are asking the foreign court to remove the case to Panama, the more convenient forum. We agree with the district court that under these facts it is unlikely that Panama would block transfer of the case by invoking the protection of Article 1421–J and the common law doctrine of preemptive jurisdiction.

Ultimately, PPP argues that the district court abused its discretion because Rajamannan did not submit specific evidence on the likely effect of Article 1421–J and preemptive jurisdiction, and thus the district court's findings are unsupported by the evidence. We disagree and in fact commend the district court for its careful examination and weighing of the issues relevant to its findings made in support of dismissal. The parties submitted expert affidavits that gave differing opinions on whether Panama was an available forum. The district court evaluated the conflicting expert affidavits, the language of the laws of Panama, the cases and commentary that have emerged from United States jurisdictions on this question, and the specific facts of this case. The court's analysis and conclusion are well reasoned and support a justifiable belief that Panama is an available forum. For these reasons, we conclude that the district court did not abuse its discretion in deciding that Panama is an available forum.

*Adequacy of Panamanian Forum*

■ PPP also argues that the district court abused its discretion in finding Panama to be an adequate forum. "Adequacy" encompasses whether the party has an effective remedy in the alternative forum. *Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. 252

(stating that in rare circumstances, the other forum may not be an adequate alternative, such as where the forum does not permit litigation of the dispute); *Bergquist,* 379 N.W.2d at 512 (stating that only if there is absolutely no effective remedy in the alternative forum will differences in the substantive law enter into the court's analysis).

The district court rejected PPP's assertion that Panama is an inadequate forum due to limitations in Panamanian law and procedure. PPP argued that Panama has weaker evidentiary rules, discovery is limited or nonexistent, testimony is limited, and a jury trial is unavailable. The court concluded that the procedural and substantive differences between Minnesota and Panama were not so substantial that it could be said that PPP has absolutely no effective remedy in Panama.

PPP contends that Panama is inadequate because it is corrupt, citing to a 2006 Department of Commerce report. U.S. Department of Commerce, *Doing Business in Panama: A Country Commercial Guide for U.S. Companies* 58 (2006). The report states that the appearance of corruption in Panama has been widely accepted "in a few cases," and the decision to avoid the courts in Panama "is understandable, given massive case backlogs and the specter of corruption." *Id.* at 53. PPP's expert, Dahl, also stated in his affidavit that Panama's procedural rules are inadequate because they do not allow deposition testimony, have limited discovery and the use of deposition testimony, and have weaker evidentiary standards.

We conclude that the district court did not err in deciding that PPP has an adequate remedy under Panama law: Rajamannan's expert stated that the laws of Panama "provide substantive rights to individuals claiming to be injured by breach of contract, or who claim to have been de-

frauded." PPP's asserted differences in procedural rules do not deprive it of its substantive remedies. Although PPP may not enjoy the same benefits and efficiencies as it might if the case were tried in the United States, that factor is not enough to make Panama an inadequate forum. Further, the district court weighed the value of the evidence of corruption in Panama. The Department of Commerce report is three years old, and it documented corruption in only a few cases, primarily involving powerful local figures. PPP raises serious concerns about procedural differences between Panamanian and American courts and also properly identifies corruption as a concern as well. But here, the district court evaluated the limited information supplied to the court and concluded that Panama did not present the "rare circumstance" of an inadequate alternative forum. We hold that the district court did not abuse its discretion in finding Panama to be an adequate alternative forum.

## II.

The next step in forum non conveniens analysis requires the court to weigh the private and public interest factors of both forums. *Bergquist*, 379 N.W.2d at 511. The private interest factors are: (1) "the relative ease of access to sources of proof"; (2) "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; (3) "possibility of view of premises, if view would be appropriate to the action"; and (4) "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Hague*, 289 N.W.2d at 46 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). Courts will also examine the enforceability of another forum's judgment. *Id.* The public interest factors to consider are: (1) the administrative difficulties flowing from court congestion; (2) the "local interest in having localized controversies decided at home"; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *See Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. 839.

Generally, a strong presumption exists in favor of the plaintiff's choice of forum, but that presumption applies "with 'less than maximum force' when the plaintiff is foreign." *Bergquist*, 379 N.W.2d at 512 (quoting *Piper*, 454 U.S. at 261, 102 S.Ct. 252). The difference makes sense. It is reasonable to assume that the plaintiff's home forum is convenient when the home forum has been chosen. When the plaintiff is foreign and has not chosen the home forum, the assumption of convenience is less reasonable. *See Piper*, 454 U.S. at 249, 102 S.Ct. 252.

### Weighing of private interests

The district court concluded that the private interest factors weighed heavily in favor of dismissal. Among the interests the court considered were the nature of the allegations in the lawsuit and the potential witnesses that would legitimately be required, the cost of travel, and the availability of compulsory service.

PPP argues the district court abused its discretion in failing to give the correct amount of deference to its choice of forum.[9] PPP asserts that defendants did

---

9. PPP also argues that the district court abused its discretion in even considering the motion to dismiss because it was untimely. There are no formal time requirements on

not identify witnesses specifically enough to establish that Panamanian witnesses would be either necessary or obtainable if the case is moved to Panama. PPP also argues that the heart of this case is in Minnesota because the financial transfers, records, and alleged fraud occurred here.

We do not find PPP's arguments persuasive. Although defendants did not provide a detailed witness list with their forum non conveniens motion, the record establishes that Panamanian witnesses are likely to be necessary and that "the heart of this case" is actually in Panama. The relevant contracts and leases were executed in Panama and the tree plantations were planted in Panama and cared for by Panamanians. PPP's representatives must travel from Australia to attend in either forum. Further, although PPP asserts there is not adequate proof that Minnesota courts will be able to enforce a Panamanian judgment, the district court expressly made the dismissal conditional on Rajamannan agreeing "to satisfy any resulting judgment from the courts of Panama." We conclude that the court did not abuse its discretion in the balancing of the private interest factors and finding that those factors weighed in favor of Panama.

*Weighing of public interests*

■ The district court found that the public interest factors also "weigh heavily in favor of dismissal." The district court, noting that the contracts and leases were executed and required performance in Panama, found it likely that the law of Panama would dominate and that Panamanian courts are better able to apply their own laws. The court noted that a jury trial would be lengthy and burdensome on the Minnesota court system. The court concluded that Panama is the forum with a greater interest in the case because the case involves "the use or misuse of valuable natural resources in Panama by foreign investors, and the integrity of Panamanian legal, corporate, and community institutions."

We conclude that the district court correctly considered the relevant public interest factors. Panama's interest in having this controversy decided in Panama is an important factor when the defendants are Panamanian residents and are willing to defend in Panama. Panama clearly has a strong interest, and responsibility, in enforcing contracts and providing institutional structures for its own businesses. The case's minimal connection to Minnesota and the burden on Minnesota courts are both established by the evidence. As we stated earlier, the formation of the contracts and the pertinent events surrounding the tree plantations happened in Panama. Even the claims that involve the

when a forum non conveniens motion can be brought. *See* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14D *Federal Practice & Procedure* § 3828 at 625–28 (3d ed. 2007). Some courts have required that a motion be brought "within a reasonable time after the facts or circumstances that serve as the basis for the motion have developed and become known or reasonably knowable to the party." *Cable News Network L.P.L.L. v. CNNews.com*, 177 F.Supp.2d 506, 528 (E.D.Va.2001) (internal quotation marks omitted).

The district court in this case found that the motion was timely. The defendants had asserted forum non conveniens in their initial answers, and the facts of the case "plainly reveal" that such a motion was possible. The district court also found that the fact-intensive nature of forum non conveniens makes some litigation inevitable. We conclude that the record supports these findings. Forum non conveniens was listed as a possible defense in the defendants' first answers, so although extensive discovery followed, the motion does not appear to have been made for dilatory purposes. *See Arthur v. Arthur*, 452 A.2d 160, 163 (D.C.1982) (noting that a district court may proceed with trial despite a belated motion to dismiss for forum non conveniens).

improper use of investment funds will require a close examination of what took place—or did not take place—in Panama. Accordingly, we conclude that the district court did not abuse its discretion in deciding that the public interest factors favor Panama.

For all of the foregoing reasons, we reverse the court of appeals and affirm the decision of the district court to dismiss on forum non conveniens, and we affirm the conditions set forth by the district court in its order for dismissal.

Reversed.