*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0043**

Michael J. Paulucci and Cynthia J. Selton,
on behalf of the Jeno F. Paulucci Revocable Trust
and the Estate of Jeno F. Paulucci,
Appellants,

vs.

Larry Nelson,
Respondent,

Jill Molitor,
Respondent.

**Filed August 8, 2016
Affirmed
Johnson, Judge**

St. Louis County District Court
File No. 69DU-CV-15-2157

Mark J. Briol, Scott A. Benson, Briol & Associates, PLLC, Minneapolis, Minnesota (for appellants)

Robert C. Pearson, Richard J. Leighton, Jacob K. Stonesifer, Johnson, Killen & Seiler P.A., Duluth, Minnesota (for respondent Larry Nelson)

John D. Kelly, Scott A. Witty, Hanft Fride, P.A., Duluth, Minnesota (for respondent Jill Molitor)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**JOHNSON**, Judge

This lawsuit was brought by two Florida residents who are beneficiaries of a trust. They sued a Florida resident and a Minnesota resident for actions that allegedly diminished the value of the trust. The district court dismissed the case without prejudice on the grounds that the plaintiffs do not have standing to assert their claims and that a Florida court would be a more convenient forum. We conclude that the district court did not err by reasoning that a Florida court would be a more convenient forum. Therefore, we affirm.

## FACTS

Jeno F. Paulucci was an entrepreneur who was born and raised in northeastern Minnesota. He later became a resident of Florida. He died in Duluth in November 2011 at the age of 93.

During his lifetime, Jeno established the Jeno F. Paulucci Revocable Trust (hereinafter the Jeno trust). At the time of his death, the Jeno trust owned approximately 40 percent of Bellisio Foods, Inc., a Minnesota corporation. In addition, Jeno's will provided that, upon his death, the residue of his estate would pour over into the Jeno trust.

In October 2011, approximately one month before his death, Jeno appointed Larry Nelson and David Simmons, both of whom are Florida residents, to replace two Minnesota-based co-trustees. Nelson was a director and officer of The Jeno and Lois Paulucci Family Foundation, a Florida non-profit corporation, which is one of the beneficiaries of the Jeno Trust. Nelson also is the personal representative of Jeno's estate. Simmons is a lawyer who had provided legal services to Jeno.

2

This action was commenced by Michael J. Paulucci and Cynthia J. Selton on behalf of Jeno's estate and the Jeno trust. Michael and Cynthia are children of Jeno and among the beneficiaries of the Jeno trust. Both Michael and Cynthia are Florida residents. Michael and Cynthia sued Nelson and Jill Molitor, a Minnesota resident who was employed as an administrative assistant to Jeno at the time of his death.

The complaint alleges two instances of tortious conduct by Nelson and Molitor. First, the complaint alleges that, on October 6, 2011, while Jeno was hospitalized and incapacitated, Nelson and Molitor wrongfully obtained for Nelson a $500,000 increase in a bonus that Bellisio Foods was contractually obligated to pay to him if Bellisio Foods was sold. The complaint alleges that Molitor signed Jeno's name on a document that authorized the increase in the bonus from $500,000 to $1,000,000 and that Nelson later received a bonus that included the additional $500,000.

Second, the complaint alleges that, on November 23, 2011, one day before Jeno's death and while he was incapacitated, Nelson and Molitor wrongfully transferred $100,000 from Jeno to Molitor. Specifically, the complaint alleges that Nelson and Molitor established a bank account that was titled in Jeno's name with a payable-on-death feature for the benefit of Molitor, and that Molitor transferred $100,000 from one of Jeno's pre-existing bank accounts to the new bank account. The complaint further alleges that Molitor later closed the account after withdrawing the account balance, $100,102.48. The complaint alleges three causes of action: (1) a violation of the Minnesota Vulnerable Adults Act, *see* Minn. Stat. § 626.557, subd. 20 (2014), (2) conspiracy, and (3) conversion. The complaint seeks compensatory damages in favor of Jeno's estate and the Jeno trust.

3

In September 2015, Nelson and Molitor filed separate motions to dismiss. Each argued that the case should be dismissed without prejudice on the ground that Michael and Cynthia do not have standing to sue on behalf of the trust and on the ground that a Florida court would be a more convenient forum. In support of his motion, Nelson submitted evidence that multiple lawsuits were pending in Florida state courts that relate to his actions as a co-trustee of the Jeno trust, as a co-trustee of another Paulucci family trust, or as the personal representative of Jeno's estate. In support of her motion, Molitor submitted evidence that at least ten cases were pending in Florida state courts that relate to Jeno's physical or mental capacity near the end of his life. In their response to the motions, Michael and Cynthia submitted additional documents concerning the cases pending in Florida in an attempt to demonstrate that those cases are dissimilar to this case.

In November 2015, the district court granted Nelson's and Molitor's motions to dismiss, for two reasons. First, the district court reasoned that Michael and Cynthia do not have standing to assert their claims because they did not sue both co-trustees of the Jeno trust. Second, the district court reasoned that, "under the Doctrine of Forum Non Conveniens, this case should be dismissed so that the claims may be brought in a more appropriate venue," *i.e.*, Florida. Michael and Cynthia appeal.

## D E C I S I O N

Michael and Cynthia argue that the district court erred by granting the motions to dismiss on the grounds that they do not have standing and that Florida would be a more convenient forum. We begin by considering the district court's reasoning that Florida would be a more convenient forum.

"The doctrine of forum non conveniens allows a district court with jurisdiction over the subject matter and the parties discretion to decline jurisdiction over a cause of action when another forum would be more convenient for the parties, the witnesses, and the court." *Paulownia Plantations de Panama Corp. v. Rajamannan*, 793 N.W.2d 128, 133 (Minn. 2009). "The first step in a forum non conveniens analysis is for the district court to establish the existence of an available and adequate alternative forum." *Id.* Such a forum is available if "the foreign court has jurisdiction over the case and the parties." *Id.* at 134. In this case, it is undisputed that Florida is an available and adequate alternative forum.

If an adequate alternative forum is available, a district court must "weigh the private and public interest factors of both forums." *Id.* at 137. The private-interest factors are:

> (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Id.* (quotation omitted). The public-interest factors are:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (quotation omitted). This court applies an abuse-of-discretion standard of review to a district court's *forum non conveniens* ruling. *Id.* at 133. A district court abuses its

discretion in making such a ruling if it "makes an erroneous legal conclusion or a clearly erroneous factual conclusion." *Id.*

In this case, the district court began its analysis of Nelson's and Molitor's *forum non conveniens* arguments by stating:

> The parties argue back and forth whether Florida is the better location for this lawsuit. Plaintiffs point out that this case concerns a claim under the Minnesota Vulnerable Adults Act, which is unlike any of the claims being pursued in Florida. (The Court would note that this claim is only Count 1 of the complaint, with Counts II and III being fully in the mix.) Defendants counter that the question of whether there was a violation of the Vulnerable Adults Act goes directly to whether Jeno Paulucci had capacity to increase Mr. Nelson's bonus or arrange for the POD account for Ms. Molitor at the times that those actions were taken. The importance of that is that capacity is very much the subject of many of the Florida matters.

> The Court has not delved into the Florida lawsuits in any detail, but it seems clear that this case belongs among them. To the extent that either the $500,000 bonus or the $100,000 POD account were transferred through dubious means, the cases involving the estate and the trust in Florida are the logical places to resolve those matters.

The district court then expressly considered the four private-interest factors. The district court determined that the third factor is neutral and that the first, second, and fourth factors favor a Florida venue. With respect to the fourth factor, the district court stated, "with everything else going on down in Florida, it makes no sense to this Court to have one small part taking place in Duluth, Minnesota."

The district court appropriately emphasized the existence of numerous related cases that are pending in the Florida state courts. In the particular circumstances of this case, the existence of those cases predominates over other relevant facts. Michael's and Cynthia's

6

brief identifies at least 16 related cases pending in the Florida state courts. Michael or Cynthia are parties to at least 13 of those cases, and Nelson is a party to at least 6 of those cases. Michael and Cynthia acknowledge that the issues raised by their complaint in this case overlap to some extent with the issues raised by at least one of the Florida cases.

The pendency of multiple related cases gives rise to a number of practical case-management issues, which easily could create difficulties for both pre-trial proceedings and trial if this case were to remain in Minnesota. For example, Nelson might be forced to defend against the same claims or similar claims, or to attend to the same issues or similar issues, in multiple jurisdictions. Also, both Nelson and Molitor would be subject to discovery in multiple jurisdictions. In addition, the pendency of related claims in multiple jurisdictions would preclude the possibility of consolidating related cases or managing them in an efficient manner. Furthermore, trial-court judges in two different states might find it necessary to monitor the progress of a case or cases in another state or to coordinate matters of scheduling.

Furthermore, the district court's reasoning is consistent with prior opinions in which the pendency of claims in another forum was deemed a valid reason for a Minnesota court to refrain from exercising its jurisdiction on *forum non conveniens* grounds. *See In re Matter of Cary*, 313 N.W.2d 625, 627-28 (Minn. 1981) (affirming district court's termination of jurisdiction over trust because District of Columbia court had concurrent jurisdiction over trustee's and beneficiary's requests for relief); *Behm v. John Nuveen & Co.*, 555 N.W.2d 301, 308-09 (Minn. App. 1996) (affirming dismissal because appellants had commenced similar claims against same defendants in federal court in Illinois). The

7

district court's reasoning also is consistent with a prior opinion of this court in which we concluded, on *forum non conveniens* grounds, that the St. Louis County District Court did not err by dismissing without prejudice a petition in which Michael and Cynthia sought to remove Nelson and Simmons as co-trustees of the Jeno trust on the ground that Jeno did not have capacity to amend the trust instrument on October 8, 2011. *See In re Jeno F. Paulucci Revocable Trust*, No. A12-1545, 2013 WL 1859074, at *1-9 (Minn. App. May 6, 2013).

Michael and Cynthia argue that the district court erred in its *forum non conveniens* analysis in three ways.

**A.**

Michael and Cynthia first argue that the district court erred by not applying a presumption in favor of their choice of forum. "Generally, a strong presumption exists in favor of the plaintiff's choice of forum . . . ." *Paulownia*, 793 N.W.2d at 137. But the presumption is not determinative because it "may be rebutted if the defendants can show that public and private interest factors favor another forum." *C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc.*, 772 N.W.2d 528, 539 (Minn. App. 2009) (citing *Bergquist v. Medtronic, Inc.*, 379 N.W.2d 508, 511 (Minn. 1986)). In this case, the district court considered various factors and concluded that they favored the Florida forum, thereby implying that the presumption was rebutted. Michael and Cynthia do not cite any caselaw for the proposition that the absence of any mention of the presumption is, by itself, reversible error. Thus, the district court did not err simply because its conclusion is contrary to the presumption that the plaintiff's choice of forum generally is favored.

**B.**

Michael and Cynthia next argue that the district court erred by misapplying the private-interest factors. They contend that the first, second, and fourth private-interest factors favor the Minnesota forum.

The district court found that the first private-interest factor favors the Florida forum on the grounds that there is not greater "ease of access to sources of proof" in Minnesota and that, "with all of the matters concerning Jeno Paulucci's capacity going on in Florida, it would be likely that intensive monitoring would be needed to ensure that this case stayed current with what was going on in Florida." Michael and Cynthia contend that the district court erred because the evidence is relatively limited and arises solely from Minnesota. The evidence to which Michael and Cynthia refer consists of documents, the location of which is not significant in "the modern electronic age." *See In re Jeno F. Paulucci Revocable Trust*, 2013 WL 1859074, at *5 (quotation omitted). Michael and Cynthia also contend that the district court's reference to the pending Florida cases is irrelevant to the first private-interest factor. We tend to agree with that contention. It appears that the first private-interest factor favors neither the Minnesota forum nor the Florida forum. *Cf. id.* (noting Nelson's concession that first private-interest factor favors neither forum).

The district court found that the second private-interest factor favors the Florida forum on the grounds that, "with the exception of Ms. Molitor, most of the potential witnesses are in or around Florida" and that "it would be extremely inconvenient and expensive to get witnesses to Minnesota." Michael and Cynthia contend that the district court erred because "the key witnesses . . . are, with the exception of Nelson, believed to

9

reside in the Duluth area." They refer specifically to Molitor, the bank employee who was involved in opening the payable-on-death account, and the medical personnel who treated Jeno during the final weeks of his life. Appellants' contention is well-taken; all the pertinent non-party witnesses appear to be in Minnesota. But that does not mean that appellants will be unable to introduce testimony of those witnesses at a trial in Florida. A non-party witness residing in Minnesota may be compelled to attend a deposition in Minnesota for purposes of a case pending in Florida. *See* Fla. R. Civ. P. 1.410(e); Minn. R. Civ. P. 45.06(b). And, as this court previously noted in similar circumstances, a video-recorded deposition may be introduced in that format at a trial in Florida. *See In re Jeno F. Paulucci Revocable Trust*, 2013 WL 1859074, at \*5; *see also* Fla. R. Civ. P. 1.310(b)(4), 1.330. The costs of this procedure likely would not be significant in light of the amount at stake and the parties' resources. It appears that the second private-interest factor favors the Minnesota forum but only slightly.

The district court found that the third private-interest factor is neutral. Michael and Cynthia contend that the third private-interest factor simply does not apply. We agree that the third private-interest factor favors neither the Minnesota forum nor the Florida forum.

The district court found that the fourth private-interest factor favors the Florida forum because of the related cases pending in Florida. Michael and Cynthia contend that the district court erred because "the principal cause of action involves the Minnesota Vulnerable Adults Act, the key events occurred in St. Louis County, and all the witnesses (save Nelson) live in Minnesota." Appellants' contentions are relevant to other factors but do not pertain to the fourth private-interest factor. As described above, the district court

10

was most concerned with the case-management issues that would arise if it were to retain jurisdiction, which is the essence of the fourth private-interest factor. We already have determined that the district court appropriately considered those practical issues. We believe that the fourth private-interest factor strongly favors the Florida forum.

To summarize, one private-interest factor (the fourth) strongly favors the Florida forum, one private-interest factor (the second) slightly favors the Minnesota forum, and the two remaining private-interest factors are neutral. In light of these circumstances and the deferential abuse-of-discretion standard of review, the district court did not err in its analysis of the private-interest factors.

## C.

Michael and Cynthia last argue that the district court erred by not considering the public-interest factors.

The district court's order does not mention the public-interest factors. It appears that the public-interest factors do not favor either the Minnesota forum or the Florida forum. The first public-interest factor appears to be neutral because there is no evidence in the record of congestion in either the Minnesota courts or the Florida courts. The second public-interest factor does not clearly favor either forum because it is unclear whether this dispute should be characterized as a Minnesota controversy or a Florida controversy. The third public-interest factor does not clearly favor either forum because it appears that both Minnesota law and Florida law must be applied. Michael and Cynthia note that they have asserted a claim under the Minnesota Vulnerable Adults Act. But to prevail, they likely must also prove that one or both co-trustees breached a duty to the trust beneficiaries by

11

not commencing an action on behalf of the trust. *See* Restatement (Third) of Trusts § 107(2)(b) (2012). This court previously noted that the Jeno trust is being administered in Florida. *See In re Jeno F. Paulucci Revocable Trust*, 2013 WL 1859074, at *6. We also noted that the trust instrument states that Florida law governs, *id.*, and such a provision "is not to be lightly disregarded," *In re Florance*, 360 N.W.2d 626, 631 (Minn. 1985). The fourth public-interest factor does not clearly favor either forum because appellants have not identified any conflicts between the laws of the two states and because we do not foresee any problems with a Florida court applying Minnesota law. And the fifth public-interest factor does not clearly favor either forum because neither forum is "an unrelated forum." *See Paulownia*, 793 N.W.2d at 137. Thus, Michael and Cynthia have not established that the public-interest factors favor the Minnesota forum. Furthermore, they do not cite any caselaw for the proposition that the absence of any mention of the public-interest factors is, by itself, reversible error.

In sum, the district court did not abuse its discretion by reasoning that Florida is a more convenient forum. Because that conclusion is a sufficient basis for the district court's dismissal of the case, we need not consider whether Michael and Cynthia have standing to assert their claims.

**Affirmed.**