**C.H. ROBINSON WORLDWIDE, INC., Respondent,**

v.

**FLS TRANSPORTATION, INC., et al., Appellants,**

**Mark Kummer, et al., Defendants.**

**No. A08–2105.**

Court of Appeals of Minnesota.

Sept. 15, 2009.

---

8. Under Rule 3.10, Minnesota Code of Judicial Conduct (eff. July 1, 2009), a judge may not practice law.

Joseph W. Hammell, Jessie A. Collings, Dorsey & Whitney, LLP, Minneapolis, MN, for respondent.

Dean A. LeDoux, Abigail S. Crouse, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for appellants.

Considered and decided by WORKE, Presiding Judge; CONNOLLY, Judge; and MUEHLBERG, Judge.

## OPINION

MUEHLBERG, Judge.*

On appeal from the district court's denial of their motion to dismiss, nonresident appellants argue that (1) forum-selection clauses in nondisclosure agreements did not create personal jurisdiction over either parties or nonparties to the agreements; (2) requisite minimum contacts did not exist to create specific personal jurisdiction over appellants who were former employees of respondent; and (3) the district court erred in refusing to dismiss respondent's claims under forum non conveniens. We affirm.

## FACTS

Respondent C.H. Robinson Worldwide, Inc., a corporation with its principal place of business in Minnesota, and appellant FLS Transportation, Inc., a Canadian corporation, are competitors in the field of transportation services. After FLS hired eight of respondent's former employees, respondent filed a complaint in Hennepin County District Court against FLS, its officers, and the eight former employees. The complaint alleged that the former employees breached their nondisclosure agreements by wrongfully using respondent's confidential and proprietary information and soliciting respondent's customers on their own behalf and on behalf of FLS. The complaint also alleged that FLS and its top officers "embarked on a know-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

ing and conscious campaign and conspiracy" to induce respondent's former employees to breach their contractual and legal obligations to respondent, and that FLS officers told these former employees that "such obligations can be secretly circumvented, [respondent] will never know, and in the event legal action is commenced FLS will support and defend" them.

Five of the former employees identified in the complaint, including appellants Arlien Casillas, Kenton K. Geghan, and Jody Winkler, signed Confidentiality and Noncompetition Agreements (CNA) during their employment with respondent. Each CNA contained a section entitled "Governing Law" providing that Minnesota law governs the interpretation and enforceability of the agreement; that "any legal action brought to enforce the terms of [the CNA] shall be brought in Hennepin County District Court, State of Minnesota or the United States District Court for the District of Minnesota"; and that the signing employee consents to the jurisdiction of those courts. The other three former employees, including appellants Scott Helton and Peter Katai, signed agreements containing Minnesota choice-of-law provisions, but did not require them to consent to the jurisdiction of Minnesota courts.[1]

Appellants moved to dismiss the claims under rule 12.02(b) for lack of personal jurisdiction and on the basis of forum non conveniens. The district court's denial of these motions is the subject of this appeal.

## ISSUES

I. Do the CNAs suffice to subject the employees who signed them, as well as FLS and its officers, to personal jurisdiction in Minnesota?

II. Do the requisite minimum contacts exist to subject all of respondent's former employees to personal jurisdiction in Minnesota?

III. Did the district court err in refusing to dismiss this case for forum non conveniens?

## ANALYSIS

### I.

 Whether personal jurisdiction exists is a question of law, which an appellate court reviews de novo. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 569 (Minn.2004). Once a defendant challenges personal jurisdiction, the burden of proof is on the plaintiff to show the jurisdiction exists. *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 n. 1 (Minn.1983). When multiple parties are named as defendants, personal jurisdiction must be established for each defendant. *See Minn. Mining and Mfg. Co. v. Rauh Rubber, Inc.*, 943 F.Supp. 1117, 1122 (D.Minn.1996) (stating that contacts of a corporation's officers or employees named as defendants are not judged by the activities of the corporation, and that "each defendant's contacts with the forum state must be assessed individually"). At the pretrial stage, a plaintiff need only make a prima facie showing of jurisdiction, and the complaint and supporting evidence will be taken as true. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (Minn. 1976)

 The district court determined that respondent made a prima facie case that Casillas, Geghan, and Winkler consented to personal jurisdiction in Minnesota by signing the CNAs, thus agreeing to

---

1. Three of the eight former employees are not parties to this appeal: W. Russel Harp and Jarrod Marinello, who signed CNAs, and Fred Rand, who signed a different nondisclosure agreement with respondent.

the forum-selection clauses therein. The decision to enforce a forum-selection clause lies within the district court's discretion and will not be disturbed unless the clause is "so unreasonable that its enforcement would be clearly erroneous and against both logic and the facts on record." *Interfund Corp. v. O'Byrne,* 462 N.W.2d 86, 88 (Minn.App.1990) (quotation omitted). A forum-selection clause is unfair or unreasonable only if: (1) the chosen forum is a seriously inconvenient location for trial; (2) the clause appears in a contract of adhesion; or (3) "the agreement is otherwise unreasonable." *Id.* "[I]n doubtful cases, doubts should be resolved in favor of retention of jurisdiction." *Hardrives,* 307 Minn. at 293, 240 N.W.2d at 816.

■■■■ Appellants argue that the CNAs are unenforceable as contracts of adhesion. "Forum-selection clauses in contracts which are termed adhesion—'take-it-or-leave-it'—contracts and which are the product of unequal bargaining power between the parties are unreasonable." *Hauenstein & Bermeister, Inc. v. Met–Fab Indus., Inc.,* 320 N.W.2d 886, 891 (Minn. 1982). That a contract is an adhesion contract can be supported by the existence of boilerplate language, but also depends on "the relative bargaining power of the parties, the opportunity for negotiation, ... and the business sophistication of the parties." *Interfund,* 462 N.W.2d at 88–89. Valid non-compete agreements must be bargained for and supported by adequate consideration. *Sanborn Mfg. Co. v. Currie,* 500 N.W.2d 161, 164 (Minn.App.1993). The mere continuation of employment can constitute adequate compensation to uphold non-compete agreements, but the non-compete must be bargained for and provide the employee with real advantages. *Davies & Davies Agency, Inc. v. Davies,* 298 N.W.2d 127, 130–31 (Minn. 1980). "The adequacy of consideration for

[non-compete agreements] signed during an ongoing employment relationship will depend upon the facts of each case." *Freeman v. Duluth Clinic, Ltd.,* 334 N.W.2d 626, 630 (Minn.1983).

■■■■ Appellants argue that the CNAs were "identical boilerplate agreements," that respondent had superior bargaining power and sophistication, and that Casillas, Geghan, and Winkler were not presented with the CNAs until "several years after their employment [began]" and signed them "in consideration for their [continued] employment." While the record shows that Casillas, Geghan, and Winkler signed the CNAs while already employed, it does not show that Casillas, Geghan, and Winkler received inadequate compensation for signing them or that they lacked business sophistication. The record at this point does not indicate that the CNAs were so unreasonable that their enforcement would be "clearly erroneous and against both logic and the facts on record." *Interfund,* 462 N.W.2d at 88 (quotation omitted). Appellants also argue that the CNAs subject them to a "seriously inconvenient" forum, citing *Hauenstein,* 320 N.W.2d at 890. But appellants show no evidence to defeat the presumption that "consideration was received at the time of contracting for the alleged inconvenience." *Id.* We therefore decline to disturb the district court's decision to enforce the forum-selection clauses.

■■■■ The district court also determined that the other appellants, though not parties to the CNAs, were bound by the forum-selection clauses therein because they were "closely related" to the dispute. "[A] third party may be bound by a forum-selection clause where it is 'closely related to the dispute such that it becomes foreseeable that it will be bound.'" *Medtronic, Inc. v. Endologix, Inc.,* 530 F.Supp.2d 1054, 1056 (D.Minn.2008) (quot-

ing *Marano Enters. of Kan. v. Z–Teca Rests., L.P.,* 254 F.3d 753, 757 (8th Cir. 2001)); *see also Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum-selection clauses" (quotation omitted)); *Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209 (7th Cir.1993) ("In order to bind a non-party to a forum-selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound." (quotations omitted)). Federal precedent, though not binding on this court, is persuasive on this point. *Riley v. Jankowski,* 713 N.W.2d 379, 404 (Minn.App.2006), *review denied* (Minn. July 19, 2006).

In *Medtronic,* the plaintiff-employer, Medtronic, sued two former employees and their current employer, Endologix, alleging that the former employees solicited Medtronic clients on Endologix's behalf. 530 F.Supp.2d at 1055–56. After Endologix removed the case to federal court, Medtronic argued that the action should be remanded to state court by the terms of the forum-selection clauses in employment agreements between the former employees and Medtronic. *Id.* at 1056. Although Endologix was not a party to these agreements, the Minnesota federal district court ruled for Medtronic, stating:

> There can be little doubt that Endologix is "closely related" to the dispute between Medtronic and [the former employees]. Indeed, it was Endologix's employment of [the former employees]—while it was fully aware of the employment agreements and, hence, the forum-selection clauses—and [the former employees'] subsequent solicitation of Medtronic clients on behalf of Endologix that gave rise to this action; this caused not only [the former employees] to be sued, but also caused Endologix to

be sued in the same case. Moreover, all of the Defendants clearly share a common interest in this action: the right of [the former employees] to solicit their former Medtronic customers on behalf of their new employer, Endologix. Indeed, were Endologix's interests not so closely aligned with [the former employees'] interests, they could not be represented by the same counsel in this action.

*Id.* at 1056–57 (citations omitted); *see also ELA Medical, Inc. v. Arrhythmia Mgmt. Assocs., Inc.,* No. 06–35, 2007 WL 892517, at *6 (D.Minn. Mar. 21, 2007) (binding to a forum-selection clause an employer who was alleged to have actively recruited an employee while knowing she was bound by her employment agreement with her former employer, and where the employee and employer shared the common interest of facilitating her immediate employment unfettered by her employment agreement). Here, the district court stated that respondent alleged that "Helton, Katai, and the FLS defendants undertook a concerted effort to solicit Casillas, Geghan, and Winkler, with knowledge that the ex-employees were subject to the CNAs." In addition, the court found that "Casillas, Geghan, and Winkler, the FLS defendants, Helton, and Katai, represented by a common attorney, share a common interest in asserting that neither improper use of C.H. Robinson information nor improper solicitation of C.H. Robinson customers occurred." The district court's findings support a conclusion that those appellants who were not parties to the CNAs were sufficiently closely related to the dispute to be bound by them.

This case also presents the question of whether a forum-selection clause that subjects the parties to personal jurisdiction in a forum state can also confer personal

jurisdiction over nonparties. Personal jurisdiction was not at issue in *Medtronic.* But in enforcing the forum-selection clauses against the nonparty appellants, we determine that they are " 'closely related to the dispute such that it becomes foreseeable' " that they would be bound by the clauses. *Medtronic,* 530 F.Supp.2d at 1054 (D.Minn.2008) (quoting *Marano Enters.,* 254 F.3d at 757). It follows that the alleged conduct of the nonparty-to-the-contract appellants is such that they should reasonably anticipate defending themselves in a Minnesota court. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (stating that personal jurisdiction should exist where the defendant's conduct and connections with the forum state are such that the defendant "should reasonably anticipate being haled into court there"). We therefore determine that the forum-selection clauses suffice to subject all of the appellants to personal jurisdiction in Minnesota. *Cf. Employers Ins. Co. of Wausau v. Equitas Holdings Ltd.,* 451 F.Supp.2d 1012, 1024–25 (W.D.Wis.2006) (reversing its decision that forum-selection clauses created personal jurisdiction over the defendants, but on the grounds that the nonsignatory defendant was not closely related to the signatory defendant and that, under applicable foreign law, only signatories to the contract could be bound by its terms).

Taking respondent's allegations as true, we conclude that the district court did not abuse its discretion in denying appellants' motion to dismiss for lack of personal jurisdiction. *Hardrives,* 307 Minn. at 293, 240 N.W.2d at 816.

## II.

 Appellants also challenge the district court's ruling that the required minimum contacts existed to subject respondent's former employees, none of whom reside in Minnesota, to specific personal jurisdiction in Minnesota. To determine whether it may exercise jurisdiction over a nonresident defendant, a court determines whether jurisdiction in the forum state satisfies the federal requirements of due process. *Domtar Inc. v. Niagara Fire Ins. Co.,* 533 N.W.2d 25, 29 (Minn.1995). The Minnesota long-arm statute, Minn. Stat. § 543.19 (2008), permits Minnesota courts to assert personal jurisdiction over defendants to the extent permitted by the federal constitution. *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 410 (Minn.1992). Consequently, Minnesota courts apply federal caselaw to determine whether personal jurisdiction exists. *Id.* at 411.

 To satisfy due process, a plaintiff must demonstrate that the defendants purposefully established minimum contacts in the forum state. *Domtar,* 533 N.W.2d at 30 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). A five-factor test determines whether sufficient contacts give rise to personal jurisdiction over a nonresident defendant: (1) the quantity of contacts with Minnesota; (2) the nature and quality of the defendant's contacts with Minnesota; (3) the connection between the cause of action and the defendant's contacts; (4) Minnesota's interest in providing a forum; and (5) the convenience of the parties. *Dent–Air,* 332 N.W.2d at 907. "The first three factors determine whether minimum contacts exist and the last two factors determine whether the exercise of jurisdiction is reasonable according to traditional notions of fair play and substantial justice." *Juelich,* 682 N.W.2d at 570. The first three factors carry the most weight in the court's overall personal-jurisdiction determination. *Dent–Air,* 332 N.W.2d at 907. In the case

of specific personal jurisdiction, which "may be satisfied for a particular cause of action if a defendant had limited contacts with the forum state that arise from or relate to a plaintiff's claim," the defendant's actual presence in the forum state is not necessary to establish minimum contacts, *Davis v. Minn. Mining and Mfg. Co.*, 590 N.W.2d 159, 162 (Minn.App.1999), *review denied* (Minn. June 16, 1999), and a "single contact with the forum can be sufficient if the cause of action arises out of that contact," *Domtar*, 533 N.W.2d at 31.

■ The district court noted respondent's allegations that its former employees "all had on-going, regular contact with Minnesota during their employment," via phone, e-mail, and respondent's computer network, and that as employees they relied on respondent to handle travel, expense reimbursement, and personnel issues and "administrative matters necessary to enter into the business deals" they procured. Respondent further alleged that the former employees' benefits were administered from Minnesota, their supervisors were located in Minnesota, they visited Minnesota for training, and they all signed agreements with respondent containing a Minnesota choice-of-law provision. Taking these allegations as true, we agree with the district court that respondent's former employees had the requisite minimum contacts with Minnesota to subject them to specific personal jurisdiction in the state. *See U.S. Surgical Corp. v. Imagyn Med. Techs., Inc.*, 25 F.Supp.2d 40, 45 (D.Conn. 1998) (determining that a nonresident former employee had sufficient contacts with the forum state because he participated in a six-week training program in, attended various meetings in, submitted his expenses to, made frequent telephone contact with offices in, and received his salary, commissions and expense reimbursement from, the forum state); *Blue Beacon Int'l,*

*Inc. v. Am. Truck Washes, Inc.*, 866 F.Supp. 485, 490–91 (D.Kan.1994) (determining that a nonresident former employee had sufficient minimum contacts with the forum state of Kansas in that (1) his contract was to be governed under Kansas law; (2) his salary and benefits were processed in Kansas; (3) he traveled to Kansas for training sessions; and (4) his supervision came from the Kansas offices).

Appellants, relying on an unpublished opinion from this court, argue that these contacts, which appellants describe as "routine administrative activity," cannot constitute sufficient contacts with Minnesota to create personal jurisdiction. *Smarte Carte Inc. v. Tran*, No. C4–96–1022, 1996 WL 689782 (Minn.App. Dec. 3, 1996). But in *Smarte Carte*, which is not precedential, this court stated only that "[a]n employment relationship between a nonresident employee and a Minnesota corporation does not, *alone*, satisfy minimum contact requirements." 1996 WL 689782 (emphasis added). There was insufficient evidence in *Smarte Carte* that, as respondent alleges here, contacts with the employer were regular and ongoing or that the employee purposely availed himself of the privilege of conducting business in Minnesota. *Id.*

■ Appellants also argue that the individual types of contacts respondent alleges are not sufficient to create personal jurisdiction, citing *Bible & Gospel Trust v. Wyman*, 354 F.Supp.2d 1025, 1029–31 (D.Minn.2005) (ruling that remote maintenance of a website did not constitute minimum contacts); *Superior Edge, Inc. v. Maricopa County Cmty. College Dist.*, 509 F.Supp.2d 786, 795 (D.Minn.2007) (ruling that improper use of computer software licensed in Minnesota did not constitute minimum contacts); *Jewish Defense Org., Inc. v. Superior Court*, 72 Cal.App.4th 1045, 85 Cal.Rptr.2d 611, 618, 621–22

(1999) (ruling that a defendant's contracting via computer with Internet service providers that may be incorporated or maintain offices or databases in California does not constitute purposeful availment for purposes of personal jurisdiction); and *Pres–Kap, Inc. v. System One, Direct Access, Inc.*, 636 So.2d 1351, 1353 (Fla.Dist. Ct.App.1994) (ruling that a New York resident's remote access of a computer database located in Florida did not constitute sufficient minimum contacts for personal jurisdiction). But "[p]ersonal jurisdiction depends upon a defendant's contacts with the forum in the aggregate, not individually, and the totality of the circumstances." *Nw. Airlines, Inc. v. Astraea Aviation Svcs., Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997) (quotation omitted). None of the cases appellants cite support their implicit argument that these activities taken together cannot constitute minimum contacts, and none of these cases involve an employer/employee relationship where, as here, multiple forms of these contacts may exist.

Appellants further challenge the district court's determination that the relationship between the employees' contacts and respondent's cause of action supports a finding of specific personal jurisdiction. Appellants cite *Lorix v. Crompton Corp.*, a class action in which tire purchasers accused the defendant of violating Minnesota antitrust laws by fixing prices of rubber-processing products. 680 N.W.2d 574, 576 (Minn.App.2004), *review denied* (Minn. Sept. 21, 2004). In *Lorix*, this court concluded that personal jurisdiction failed for lack of a direct connection between the alleged injury and the forum state contacts. *Id.* at 579. But in *Lorix*, the defendant's only sales of its products in Minnesota were to companies that manufactured products other than tires, and therefore the claim that Minnesota consumers were overcharged for tires did not relate direct-

ly to, or arise from, the defendant's Minnesota sales. *Id.* at 579–80. Unlike in *Lorix*, respondent alleges a direct connection between the appellant's conduct and respondent's causes of action here, in that the causes of action arise directly from alleged breaches of and tortious interference with contracts with respondent, a Minnesota corporation. *Lorix* is therefore inapposite.

Accepting respondent's allegations as true, *Hardrives*, 307 Minn. at 293, 240 N.W.2d at 816, respondent has satisfied its burden of showing that minimum contacts between its former employees and Minnesota exist so as to create specific personal jurisdiction. As to the reasonableness of personal jurisdiction, we observe that respondent's former employees reside in locations ranging from Canada to Louisiana. But this case involves an alleged injury to a Minnesota resident, and both respondent and Minnesota therefore have an interest in resolving the dispute here. Moreover, each of the former employees signed agreements designating Minnesota law as the law of choice, and Minnesota courts will therefore be best able to resolve this dispute. *See Bergquist v. Medtronic, Inc.*, 379 N.W.2d 508, 511 n. 4 (Minn.1986) ("There is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."). Subjecting respondent's employees to specific personal jurisdiction is reasonable in this case.

### III.

Appellants argue that the district court erred in not dismissing the complaint under the doctrine of forum non conveniens. Dismissal of a case on the

grounds of forum non conveniens may be appropriate when "the exercise of personal jurisdiction imposes a hardship that does not rise to the level of a due process violation." *Rykoff–Sexton, Inc. v. Am. Appraisal Assocs., Inc.,* 469 N.W.2d 88, 91 (Minn.1991). There is a strong presumption in favor of a plaintiff's choice of forum, although this presumption may be rebutted if the defendants can show that public and private interest factors favor another forum. *Bergquist,* 379 N.W.2d at 511. A district court must balance the factors, which include the forum state's interest in resolving the case locally, the administrative burden on the forum state, access to sources of proof, availability of witnesses, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 511 n. 4. A district court's application of forum non conveniens is reviewed for an abuse of discretion. *Id.* at 511–12.

We agree with the district court that, because this case involves an alleged injury to a Minnesota resident, Minnesota has a strong interest in allowing respondent to sue within its borders, that the case was "sufficiently related to Minnesota to justify the administrative burden on the court," and that allowing the suit to go forward would not unfairly impose jury duty on community members. As to private interests of the litigants, Minnesota is clearly the most convenient forum for respondent, and it is reasonable to presume that much of the evidence in this case would come from Minnesota as well. We further observe that the CNAs provide that Minnesota law applies to disputes. *See id.* at 511 n. 4 (stating that it is appropriate for the "forum that is at home with the state law" to govern the case). Appellants, who are widely geographically dispersed, fail to show that the balance of public and private interest factors favors another forum, and for this reason we conclude that the dis-

trict court did not abuse its discretion in refusing to dismiss this case for forum non conveniens.

# DECISION

The district court correctly denied appellants' motion to dismiss this action for lack of personal jurisdiction and for forum non conveniens.

**Affirmed.**