*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0274**

Fair Isaac Corporation,
Respondent,

vs.

Michael Gordon,
Defendant,
Callcredit Information Group Limited,
Appellant.

**Filed December 27, 2016
Affirmed
Reyes, Judge
Dissenting, Schellhas, Judge**

Hennepin County District Court
File No. 27CV1513982

Thomas P. Kane, Steven H. Silton, Armeen F. Mistry, Cozen O'Connor, P.C., Minneapolis, Minnesota; and

Jason A. Cabrera, Philadelphia, Pennsylvania (pro hac vice) (for respondent)

Monte A. Mills, Jenny Gassman-Pines, Greene Espel, P.L.L.P., Minneapolis, Minnesota;

Jennifer M. Bandy, Kirkland & Ellis, L.L.P., Washington, D.C. (pro hac vice); and

Michael B. Slade, Kelsey L. Kingsbery, Kirkland & Ellis, L.L.P., Chicago, Illinois (pro hac vice) (for appellant)

        Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant argues that the district court cannot subject it to personal jurisdiction under the "closely related" doctrine applied in *C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc.*, 772 N.W.2d 528 (Minn. App. 2009). Alternatively, appellant argues that this court should overrule *FLS Transportation*. Because we conclude that the "closely related" doctrine applies and because appellant has not presented compelling reasons to overrule *FLS Transportation*, we affirm.

## FACTS

Appellant Callcredit Information Group Limited is an English company with its headquarters in the United Kingdom and offices in Japan, Lithuania, China, and Dubai. Respondent Fair Isaac Corporation (FICO) is a Delaware corporation with its headquarters in California. Michael Gordon is a former employee of FICO who left FICO to work at Callcredit.

When FICO first hired Gordon in 2005, he executed a proprietary information and inventions agreement (PIIA) in which he promised not to disclose FICO's confidential and proprietary information, not to disclose information about the skills and compensation of other employees, and not to solicit any FICO employees for a 12-month period after his employment with FICO ended. The PIIA also included a forum-selection clause, subjecting Gordon to personal jurisdiction "in the state or federal courts located in Hennepin County in the state of Minnesota . . . for purposes of any lawsuit arising out of,

or related to," the PIIA.  In 2012, Gordon signed a second PIIA that contained the same provisions.

Gordon resigned from FICO on or about November 3, 2014.  One week later, Callcredit announced that it hired Gordon as its chief executive officer.  Prior to hiring Gordon, Callcredit was aware of the provisions of the PIIAs Gordon signed with FICO.

FICO alleges that starting in November 2014, Gordon used confidential and proprietary information belonging to FICO to solicit four current FICO employees to terminate their employment at FICO and to work at Callcredit instead.  Thus, in August 2015, FICO filed a complaint against Callcredit and Gordon for breach of the PIIAs.  FICO alleged that Callcredit intentionally brought about the breach of Gordon's PIIAs.  FICO also claimed that Gordon's actions damaged FICO's goodwill, reputation, and the security of FICO's confidential and proprietary information.

In response to FICO's complaint, Callcredit filed a motion to dismiss for lack of personal jurisdiction under Minn. R. Civ. P. 12.02(b).  The district court denied Callcredit's motion to dismiss, concluding that, even though it was not a party to the PIIAs, Callcredit consented to personal jurisdiction in Minnesota pursuant to the "closely related" doctrine.  This appeal follows.

**D E C I S I O N**

Whether personal jurisdiction exists is a question of law, which we review de novo. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 569 (Minn. 2004). When a defendant challenges personal jurisdiction, the plaintiff has the burden of proof to show jurisdiction exists. *Id.* at 569-70.  At the pretrial stage, the plaintiff need only make

3

a prima facie showing of personal jurisdiction, and the allegations and supporting evidence in the plaintiff's complaint will be taken as true for the purposes of determining whether personal jurisdiction exists. *Id.* (citing *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 n.1 (Minn. 1983)); *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). Any "doubts" about jurisdiction should be "resolved in favor of retention of jurisdiction." *Hardrives, Inc.*, 307 Minn. at 296, 250 N.W.2d at 818.

Personal jurisdiction over a nonresident defendant may be obtained by consent. *Rykoff–Sexton, Inc. v. Am. Appraisal Assocs., Inc.*, 469 N.W.2d 88, 90 (Minn. 1991). "A party can submit to a court's jurisdiction through express or implied consent." *Blume Law Firm PC v. Pierce*, 741 N.W.2d 921, 925 (Minn. App. 2007), *review denied* (Minn. Feb. 19, 2008) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). A party's submission to jurisdiction need not be voluntary. *Id.* (citing *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 704-05). Further, a valid forum-selection clause is sufficient to establish personal jurisdiction over a party to the agreement. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 2182 n.14 (1985).

Callcredit argues that the district court "erroneously expanded" the "closely related" doctrine applied in *FLS Transportation* to subject it to personal jurisdiction in Minnesota. Callcredit asserts that traditional principles of agency and contract law as well as British law limit the application of the "closely related" doctrine. Alternatively, Callcredit argues that this court should reconsider its decision in *FLS Transportation* in

4

light of recent Supreme Court decisions, due process, and the treatment of nonsignatories to arbitration clauses.

Callcredit's arguments are unavailing. We address each in turn.

## I.     The district court appropriately determined that Callcredit is subject to personal jurisdiction in Minnesota under the "closely related" doctrine.

Callcredit argues that the district court erred when it determined that Callcredit consented to personal jurisdiction in Minnesota pursuant to the "closely related" doctrine. A nonparty to a forum-selection clause may consent to its terms if the party is so "closely related" to the dispute that it becomes foreseeable that the party will be bound. *FLS Transportation*, 772 N.W.2d at 534 (citing *Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1056 (D. Minn. 2008)). In *FLS Transportation*, C.H. Robinson alleged that former employees breached nondisclosure agreements and that FLS and its officers knowingly induced the former employees to breach the agreements. *Id.* at 532-33. The complaint alleged that FLS told the employees that "such obligations can be secretly circumvented, [C.H. Robinson] will never know, and in the event legal action is commenced FLS will support and defend them." *Id.* at 533 (quotation omitted). On appeal from the district court's denial of FLS's and certain employee's motion to dismiss for lack of personal jurisdiction, this court held that FLS and other nonparties to a forum-selection clause were subject to personal jurisdiction in Minnesota based on their close relation to the dispute. *Id.* at 536.

*FLS Transportation* and the current case are strikingly similar: FICO, like C.H. Robinson, sued its former employee and his new employer; Callcredit, like FLS, is a

5

foreign company; FICO, like C.H. Robinson, alleged that its former employee breached the PIIAs and that the new employer induced this breach; Callcredit, like FLS, was aware of the PIIAs prior to hiring Gordon; and Callcredit and Gordon, like FLS and C.H. Robinson's former employees, are represented by the same attorney and have the same interest in this litigation as evidenced in their answers and defenses. *See Medtronic, Inc. v. Ernst*, __ F. Supp. 3d __, __, 2016 WL 1651801, at *6 (D. Minn. Apr. 26, 2016) (declining to extend "closely related" doctrine where former employee and new employer were represented by separate counsel). Based on *FLS Transportation*, Callcredit was so "closely related" to the dispute that it should have foreseen being haled into court in Minnesota.

Callcredit argues that *FLS Transportation* is not controlling because here, unlike in *FLS Transportation*, FICO never alleged that Callcredit promised to support and defend Gordon in litigation if he breached the PIIAs. While true, Callcredit's argument ignores the significant similarities between *FLS Transportation* and the current case. Moreover, FICO need only make a prima facie showing of personal jurisdiction. *Dent–Air*, 332 N.W.2d at 907; *Hardrives*, 307 Minn. at 293, 240 N.W.2d at 816. Taking FICO's allegations as true, as we must, it has met this burden. *Juelich*, 682 N.W.2d at 570; *Hardrives*, 307 Minn. at 293, 240 N.W.2d at 816.

**A.  Traditional principles of agency and contract law do not preclude application of the "closely related" doctrine to Callcredit.**

Callcredit asserts that courts applying the "closely related" doctrine limit it in accordance with agency and contract law. But Callcredit admits that *FLS Transportation*

6

does not involve the typical agency or contract grounds it asserts to be necessary to apply the "closely related" doctrine. In an attempt to reconcile this difference, Callcredit asserts that the *FLS Transportation* facts could have given rise to a promissory estoppel case. However, *FLS Transportation* makes no mention of promissory estoppel. Thus, Callcredit's assertion that traditional principles of agency or contract are required to apply the "closely related" doctrine fails.[1]

**B.      British law does not limit the application of the "closely related" doctrine in this situation.**

Callcredit further asserts that the district court's application of *FLS Transportation* and the "closely related" doctrine was improper because the foreseeability element contravenes British law, citing *Employers Ins. Co. of Wausau v. Equitas Holdings Ltd.*, 451 F. Supp. 2d 1012 (W.D. Wis. 2006), and *Daimler A.G. v. Bauman*, 134 S. Ct. 746 (2014).

In *Equitas Holdings*, the United States District Court for the Western District of Wisconsin held that an English reinsurer was not so closely related to the dispute between a Wisconsin insurance company and an English underwriter that it would have foreseen

---

[1] Callcredit also cites persuasive authority to support its assertion. In these cases, courts declined to enforce forum-selection clauses against nonsignatories because the facts indicated that the nonsignatories were not "closely related" in a way that subjected them to the forum-selection clause. *See e.g.*, *Bent v. Zounds Hearing Franchising LLC*, No. 15-6555, 2016 WL 153092, at *4 (S.D.N.Y. Jan. 12, 2016) (declining to enforce forum-selection clause because nonsignatory was not "closely related" to dispute where it played no role in executing agreement, was not third-party beneficiary, and was not agent); *Presbyterian Healthcare Servs. v. Goldman, Sachs, & Co.*, 122 F. Supp. 3d 1157, 1211-12 (D. N.M. 2015) (declining to enforce forum-selection clause because nonsignatory was not "closely related" to dispute where it issued bonds but was not ultimately liable for them).

being haled into American court under the forum-selection clause in the agreement between the insurance company and the underwriter because the English insurer's role was only to indemnify the underwriter. 451 F. Supp. 2d at 1022-25.

> The British rule is clear: only signatories to a contract may be held to its provisions. Because the relationship between the Equitas defendants and the Lloyd's defendant was governed explicitly by British law, it would not have been immediately apparent to the Equitas defendants that American courts, applying American law, might bind them to the selection of suit clauses contained in the Lloyd defendants' insurance contracts with insureds such as plaintiff, to which the Equitas defendants were not privy.

*Id.*

In *Daimler A.G.*, the Supreme Court held that a German company is not subject to general jurisdiction in California for injuries caused by its Argentinian subsidiary that took place outside of the United States. 134 S. Ct. at 763. The Supreme Court noted that, generally, a European corporation may only be sued where its headquarters is located. *Id.*

First, *Equitas Holdings* is not binding authority. Second, it is factually different. Here, Callcredit hired Gordon knowing that he signed PIIAs with FICO containing forum-selection clauses. FICO alleges that Callcredit procured the breach of Gordon's PIIAs and knew or should have known that Gordon's actions were in violation of the agreements. Unlike in *Equitas Holdings*, Callcredit's knowledge of the PIIAs should have alerted Callcredit that it could be haled into court if it procured a breach of those agreements. Moreover, although *Daimler A.G.* notes that a European corporation generally may only be sued where its headquarters is located, Callcredit's knowledge of

8

the PIIAs and the forum-selection clauses contained within them put Callcredit on notice that it could be subject to personal jurisdiction in Minnesota. Therefore, Callcredit's argument that the district court's application of *FLS Transportation* was improper in light of British law fails.

## II. Callcredit has not presented compelling reasons for this court to overturn *FLS Transportation*.

Callcredit argues that, if this court views *FLS Transportation* as controlling, it should overrule that decision. First, Callcredit contends that *FLS Transportation* conflicts with Supreme Court opinions released after it was decided. Second, Callcredit asserts that *FLS Transportation* ignores due process concerns associated with enforcing a forum-selection clause against a nonsignatory in a forum that would not otherwise have personal jurisdiction over the party. Finally, Callcredit argues that the "closely related" doctrine is inconsistent with Minnesota's treatment of nonsignatories of arbitration clauses. Callcredit's arguments are unavailing.

The doctrine of stare decisis directs courts to adhere to prior decisions in order to maintain stability in the law. *Doe v. Lutheran High Sch. of Greater Minneapolis*, 702 N.W.2d 322, 330 (Minn. App. 2005), *review denied* (Minn. Oct. 26, 2005). Stare decisis, however, "is not an inflexible rule of law but rather a policy of the law." *Johnson v. Chicago, B. & Q. R.R.*, 243 Minn. 58, 68, 66 N.W.2d 763, 770 (1954). Thus, this court may overrule its own precedent if there is a compelling reason to do so. *State v. Martin*, 773 N.W.2d 89, 98 (Minn. 2009).

9

### A. Recent Supreme Court decisions do not compel reconsideration of *FLS Transporation*.

Callcredit cites four Supreme Court cases decided after *FLS Transportation* in support of its argument that this court should reconsider its holding in *FLS Transportation*: *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 131 S. Ct. 2846 (2011); *Daimler A.G.*, 134 S. Ct. 746; *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780 (2011) (plurality opinion); and *Walden v. Fiore*, 134 S. Ct. 1115 (2014).

The cases Callcredit cites do not address forum-selection clauses or the "closely related" doctrine.[2]  Thus, Callcredit's argument that the Supreme Court has changed the caselaw surrounding *FLS Transportation* in a way that compels this court to overturn its ruling is unavailing.

### B. *FLS Transportation* does not offend due process.

Callcredit next argues that *FLS Transportation* ignores due process concerns associated with enforcing a forum-selection clause against a nonsignatory in a forum in

---

[2] In *Goodyear*, the Supreme Court held that the fact that tires of Goodyear's foreign subsidiaries made it to North Carolina through the stream of commerce was not a sufficient connection between the forum and the foreign corporation to form the basis of general jurisdiction.  564 U.S. at 918-19, 131 S. Ct. at 2850-51.  *Daimler A.G.* is discussed above.  Further, in *J. McIntyre*, the Supreme Court found that the petitioner did not "engage in any activities in New Jersey that reveal[ed] an intent to invoke or benefit from the protection of its laws" and reversed the supreme court of New Jersey's holding that a British manufacturer was subject to personal jurisdiction in New Jersey because it knew or should have known that its products might end up there.  564 U.S. at 877, 887, 131 S. Ct. at 2785, 2791.  Finally, in *Walden*, the Supreme Court held that a police officer's knowledge of certain travelers' connections to Nevada did not create sufficient minimum contacts for Nevada to assert specific jurisdiction over the officer.  134 S. Ct. at 1125.

which the nonsignatory is not otherwise subject to personal jurisdiction. Specifically, Callcredit argues that *FLS Transportation* relied on *Medtronic*, 530 F. Supp. 2d 1054, which concerns venue, and *FLS Transportation* provides only a cursory analysis of personal jurisdiction through a citation to *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 100 S. Ct. 559 (1980).

In addition to venue, *Medtronic* specifically discusses application of the "closely related" doctrine with reference to how a nonsignatory may become bound by a forum-selection clause. 530 N.W.2d at 1056-57. ("[W]hen deciding whether the doctrine applies, a court must answer only the following question: should the third party reasonably foresee being bound by the forum-selection clause because of its relationships to the cause of action and the signatory to the forum-selection clause?").

Further, *Volkswagen* discusses the applicability of foreseeability to specific personal jurisdiction. 444 U.S. at 287, 295, 100 S. Ct. at 562, 566. The case defines what foreseeability means in the context of due process analysis. *Id.* at 297, 100 S. Ct. at 298 ("But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum [s]tate. Rather, it is that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there."). Thus, *FLS Transportation* cited *Volkswagen* to support the conclusion that a nonsignatory to a forum-selection clause may nonetheless be subject to personal jurisdiction in the forum stated in the clause where the nonsignatory could foresee being haled into court there. Because both

11

*Medtronic* and *Volkswagen* address the issue of subjecting a nonsignatory to the terms of a forum-selection clause, Callcredit's due process argument fails.

### C. Differing treatment between arbitration and forum-selection clauses does not compel reconsideration of *FLS Transportation*.

Finally, Callcredit argues that application of the "closely related" doctrine to forum-selection clauses creates an improper inconsistency in Minnesota because there is no "closely related" rule for arbitration clauses.

"[A]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S. Ct. 2449, 2457 (1974). Callcredit, however, does not cite any caselaw stating that arbitration clauses and forum-selection clauses must be treated the same. Although Callcredit identifies cases that make analogies between arbitration and forum-selection clauses, analogies do not necessitate equal treatment. *Compare Personalized Marketing Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447 (Minn. App. 1989), *review denied* (Minn. Jan. 12, 1990) (reaching conclusion about forum-selection clause through analogy to arbitration clause), *and Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 640, 105 S. Ct. 3346, 3355 (1985) (making analogy to forum-selection clauses to determine adequacy of arbitration clause), *with Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886 (Minn. 1982) (declining to extend holding of arbitration clause case to forum-selection clause case). Applying the "closely related" doctrine to forum-selection clause cases and not arbitration clause cases is not a compelling reason to overturn *FLS Transportation*.

Callcredit asserts that the current matter is similar to *State ex rel. Pollard v. Roy*, in which this court found compelling reasons to depart from an earlier precedential case, including (1) dicta from the supreme court that contradicted an important conclusion in the earlier case; (2) this court previously expressed concerns with the precedential case; (3) an amendment to the legislation cast doubt on the earlier case; and (4) the precedential case was at odds with this court's understanding of the legislation. 787 N.W.2d 341, 348-49 (Minn. App. 2016), *review granted* (Minn. June 29, 2016). However, none of those reasons exist here.

Because the district court properly applied the "closely related" doctrine to subject Callcredit to personal jurisdiction in Minnesota, analysis of whether Callcredit has sufficient minimum contacts with Minnesota is not necessary. *Rykoff–Sexton*, 469 N.W.2d at 90 ("With consent, resort to the constitutional test for personal jurisdiction is not required because the defendant obviously can reasonably anticipate being haled into court after consenting to jurisdiction." (citation omitted)).

**Affirmed.**

**SCHELLHAS**, Judge (dissenting)

I respectfully dissent from the majority's conclusion that Callcredit Information Group Limited is subject to personal jurisdiction in Minnesota under the closely related doctrine.

In *C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc.*, C.H. Robinson alleged that FLS Transportation induced C.H. Robinson's former employees to breach nondisclosure agreements that they had entered "by wrongfully using [C.H. Robinson]'s confidential and proprietary information and soliciting [C.H. Robinson]'s customers on their own behalf and on behalf of FLS." 772 N.W.2d 528, 532−33 (Minn. App. 2009), *review denied* (Minn. Nov. 24, 2009). Citing *Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1054 (D. Minn. 2008), this court affirmed the district court's denial of FLS's motion to dismiss for lack of personal jurisdiction. *FLS*, 772 N.W.2d at 536. But this court acknowledged that "[p]ersonal jurisdiction was not at issue in *Medtronic*" and discussed the closely related doctrine only briefly. *Id.* This court did not explain why the closely related doctrine should bind FLS to Minnesota state court jurisdiction, stating only that "in enforcing the forum-selection clauses against the nonparty appellants, we determine that they are closely related to the dispute such that it becomes foreseeable that they would be bound by the clauses." *Id.* (quotation omitted).

I acknowledge that some courts have enforced contracts against noncontracting parties when the parties are so closely related to a dispute that the enforceability against the noncontracting parties is foreseeable. *See Medtronic, Inc. v. Ernst*, __ F. Supp. 3d __, __, 2016 WL 1651801, at *6 (D. Minn. Apr. 26, 2016) (stating that "[a] non-contracting

D-1

party may be bound by an agreement if it is 'closely related to the dispute such that it becomes foreseeable that it will be bound'") (quoting *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001)). But I disagree that we should base our decision in this case on the closely related doctrine under the precedence of *FLS*. As noted in *Ernst*, "several district court cases have considered the closely-related party doctrine since *Marano*," 2016 WL 1651801, at *6, which this court cited in *FLS*, 772 N.W.2d 534−35.

The *Ernst* court also noted that when determining that parties were closely related, "[m]ost courts have . . . relied on the fact that the non-contracting party voluntarily associated itself with the contracting party in some type of legal process." 2016 WL 1651801, at *6. The voluntary association in *FLS* is significantly distinguishable from the case before us. In *FLS*, C.H. Robinson alleged that FLS engaged in a "knowing and conscious campaign and conspiracy to induce [the] former employees to breach" the agreements and agreed to defend the employees "in the event legal action [was] commenced." 772 N.W.2d at 532–33. In this case, FICO does not allege that Callcredit promised to support and defend Michael Gordon in litigation if he breached the nondisclosure agreements.

Here, although Callcredit and Gordon are represented by the same counsel, nothing in the record suggests that Callcredit voluntarily associated itself with Gordon in litigation regarding the nondisclosure agreements. I therefore would conclude that Callcredit is not closely related to the dispute such that it should have foreseen being bound by the forum-selection clauses. *See Ernst*, 2016 WL 1651801, at *7 (concluding that the closely related

doctrine did not "bind an out-of-state new employer to state court based on a contract to which it was not a party and where it did not voluntarily join the contracting employee in any litigation"). Because I would decline to apply the closely related doctrine to bind Callcredit, the out-of-state new employer, to Minnesota state court jurisdiction based on a contract to which it was not a party and where it did not voluntarily join the contracting employee in any litigation, and because no other basis exists for subjecting Callcredit to the personal jurisdiction of Minnesota state court, I would reverse.