*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1009**

Medtronic, Inc., et al.,
Respondents,

vs.

Matthew Lahn, et al.,
Defendants,

AlphaTec Spine, Inc.,
Appellant.

**Filed March 2, 2026**
**Affirmed**
**Johnson, Judge**

Anoka County District Court
File No. 02-CV-24-6037

Sarah A. Horstmann, Jade B. Jorgenson, Danny A. Bihrle, Melissa R. Stumbras, Fredrickson & Byron, P.A., Minneapolis, Minnesota (for respondents)

Joel Andersen, Daniel J. Supalla, Austin J. Spillane, Nilan Johnson Lewis, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Ede, Presiding Judge; Johnson, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

Medtronic, Inc., a Minnesota corporation, sued AlphaTec Spine, Inc., a California corporation, in Minnesota. AlphaTec moved to dismiss for lack of personal jurisdiction.

The district court denied the motion. We conclude that the district court did not err by concluding that personal jurisdiction over AlphaTec exists under the closely-related-party doctrine. Therefore, we affirm.

**FACTS**

Medtronic, Inc., is a Minnesota corporation with its principal place of business in Minnesota. AlphaTec Spine, Inc., is a California corporation with its principal place of business in California. Medtronic and AlphaTec are competitors in the business of making and selling products used in spinal surgeries.

Medtronic alleges in its complaint that Matthew Lahn and Joshua Tucker are residents of Colorado. Each is a former employee of Medtronic who lived and worked for Medtronic in Colorado. Each entered into a written employment agreement with Medtronic, Tucker in 2017 and Lahn in 2019. Each employment agreement provides that "[a]ny dispute arising out of or related to this agreement . . . shall be exclusively decided by a state court in the State of Minnesota" and that the employee "irrevocably waives employee's right, if any, to have any disputes between employee and Medtronic arising out of or related to this agreement decided in any jurisdiction or venue other than a state court in the State of Minnesota." Each employment agreement further provides that the employee "irrevocably consents to the personal jurisdiction of the state courts in the State of Minnesota for the purposes of any action arising out of or related to this agreement." In addition, in 2022, Lahn and Tucker each signed an addendum to the employment agreement in which each agreed to work for Medtronic until July 31, 2025.

2

In the spring of 2024, AlphaTec sought to hire Colorado-based sales representatives and considered Lahn and Tucker for the positions. AlphaTec learned that Lahn and Tucker were employed by Medtronic and had entered into written agreements with Medtronic. In May 2024, AlphaTec's general counsel retained a Minnesota attorney to review Lahn's and Tucker's agreements with Medtronic to determine whether the agreements were enforceable and whether (in the general counsel's words) AlphaTec would be "acting within its rights by offering employment to Tucker and Lahn and would not be interfering with any contractual obligations." The Minnesota attorney reviewed the agreements, considered other information provided to her by AlphaTec, and provided AlphaTec with a 16-page opinion letter. After receiving the opinion letter, AlphaTec made job offers to Lahn and Tucker.

In June 2024, both Lahn and Tucker resigned their employment with Medtronic, approximately 14 months before the expiration of their three-year terms. An attorney representing Lahn and Tucker informed Medtronic by e-mail that each would be accepting an offer of employment with AlphaTec. Medtronic responded by stating that Lahn and Tucker had agreed to work for Medtronic until July 2025 and by requesting confirmation that AlphaTec would withdraw its offers of employment. AlphaTec's attorney replied by stating that AlphaTec was aware of and had reviewed Lahn's and Tucker's agreements and by disputing that the agreements prevented Lahn and Tucker from accepting employment with AlphaTec.

In October 2024, Medtronic and its subsidiary, Medtronic Sofamor Danek USA (hereinafter, collectively, Medtronic) commenced this action against AlphaTec, Lahn, and

Tucker in Anoka County District Court. Medtronic asserts three causes of action: (1) breach of contract against Tucker, (2) breach of contract against Lahn, and (3) tortious interference with contract against AlphaTec.

In November 2024, AlphaTec served and filed a motion to dismiss for lack of personal jurisdiction. AlphaTec argued that the district court lacks both general jurisdiction and specific jurisdiction over AlphaTec and that AlphaTec is not subject to personal jurisdiction under the closely-related-party doctrine. In response, Medtronic argued that the district court has personal jurisdiction over AlphaTec under both the closely-related-party doctrine and under a traditional minimum-contacts analysis.

In May 2025, the district court filed a 29-page order in which it denied AlphaTec's motion. The district court reasoned that the closely-related-party doctrine applies and that personal jurisdiction exists because Medtronic has satisfied the requirements of the doctrine. In the alternative, the district court reasoned that personal jurisdiction also exists under a traditional minimum-contacts analysis. AlphaTec appeals.

## DECISION

AlphaTec argues that, for two reasons, the district court erred by denying its motion to dismiss for lack of personal jurisdiction. First, AlphaTec argues that personal jurisdiction does not exist under the closely-related-party doctrine. Second, AlphaTec argues that personal jurisdiction does not exist under a traditional minimum-contacts analysis.

4

## A.

A Minnesota state court "may exercise personal jurisdiction over any foreign corporation or any nonresident individual . . . in the same manner as if it were a domestic corporation or the individual were a resident of this state," so long as the out-of-state defendant has an interest in real property within the state, transacts business in the state, commits an act in the state that causes injury or property damage, or commits an act outside the state that causes injury or property damage in the state. Minn. Stat. § 543.19, subd. 1 (2024). The supreme court has interpreted the statute to be broad enough to authorize any exercise of personal jurisdiction that is permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Vikse v. Flaby*, 316 N.W.2d 276, 281 (Minn. 1982). Consequently, in determining whether a district court has personal jurisdiction over an out-of-state defendant, Minnesota courts typically seek to determine whether federal constitutional law allows the exercise of personal jurisdiction. *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 327 (Minn. 2016).

Federal constitutional caselaw provides that a state court may exercise personal jurisdiction over an out-of-state defendant if the defendant has "minimum contacts" with the forum state so that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). To satisfy the minimum-contacts requirement, an out-of-state business entity must have "purposefully availed" itself of the privilege of conducting activities within the forum state such that the defendant "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

5

474-82 (1985) (quotations omitted). "The 'minimum contacts' necessary to support specific personal jurisdiction over the defendant must focus on 'the relationship among the defendant, the forum, and the litigation,' and the 'defendant's suit-related conduct must create a substantial connection with the forum state.'" *Rilley*, 884 N.W.2d at 327 (footnote omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). "If minimum contacts are established, we must consider the reasonableness of personal jurisdiction according to traditional notions of fair play and substantial justice, weighing factors such as the convenience of the parties and the interests of the forum state." *Id.* at 328 (quotations omitted).

Personal jurisdiction over a nonresident defendant also may be based on the nonresident defendant's consent. *Rykoff-Sexton, Inc. v. American Appraisal Assocs., Inc.*, 469 N.W.2d 88, 90 (Minn. 1991); *Blume Law Firm PC v. Pierce*, 741 N.W.2d 921, 925 (Minn. App. 2007), *rev. denied* (Minn. Feb. 19, 2008). The United States Supreme Court has explained that, because personal jurisdiction is waivable, a person may "stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Burger King*, 471 U.S. at 472 n.14. So long as such an agreement is "freely negotiated" and "not unreasonable and unjust," the enforcement of such an agreement "does not offend due process." *Id.* (quotations omitted).

In addition, this court has applied the consent theory to a person who was not a party to an agreement containing a waiver of or consent to personal jurisdiction. In *C.H. Robinson Worldwide, Inc. v. FLS Transportation, Inc.*, 772 N.W.2d 528 (Minn. App. 2009), *rev. denied* (Minn. Nov. 24, 2009), we stated that a "third party may be bound by a

6

forum-selection clause where it is 'closely related to the dispute such that it becomes foreseeable that it will be bound.'" *Id.* at 534-35 (quoting *Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1056 (D. Minn. 2008) (quoting *Marano Enters. v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757 (8th Cir. 2001))). We further considered "whether a forum-selection clause that subjects the parties to personal jurisdiction in a forum state can also confer personal jurisdiction over" a person who is not a party to the agreement containing the forum-selection clause. *Id.* at 535-36. We reasoned that "the alleged conduct" of such a person may be "such that they should reasonably anticipate defending themselves in a Minnesota court." *Id.* at 536 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). We concluded in *C.H. Robinson* that a foreign corporation and its officers, who did not sign the agreements containing forum-selection and consent-to-jurisdiction clauses, nonetheless were subject to personal jurisdiction under the closely-related-party doctrine. *Id.* at 536.[1]

If a defendant challenges the existence of personal jurisdiction, the plaintiff has the burden to show the facts necessary to support the district court's exercise of personal jurisdiction. *Bandemer v. Ford Motor Co.*, 931 N.W.2d 744, 749 (Minn. 2019); *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 569-70 (Minn. 2004). Upon a motion

---

[1]Since issuing the *C.H. Robinson* opinion, this court has applied the closely-related-party doctrine to non-signatory defendants in at least three nonprecedential opinions. *See U.S. Holdings, Inc. v. Williston Holding Co.*, No. A24-0795, 2025 WL 440351, at *6-7 (Minn. App. Feb. 10, 2025); *Fair Isaac Corp. v. Gordon*, No. A16-0274, 2016 WL 7439084, at *2-3 (Minn. App. Dec. 27, 2016), *rev. granted* (Minn. Mar. 28, 2017), *rev. dismissed* (Minn. Aug. 21, 2017); *C.H. Robinson Worldwide, Inc. v. XPO Logistics, Inc.*, No. A13-1797, 2014 WL 2565690, at *7-8 (Minn. App. June 9, 2014), *rev. denied* (Minn. Aug. 19, 2014).

to dismiss for lack of personal jurisdiction, the allegations in the complaint and any supporting affidavits are assumed to be true for the purpose of determining whether personal jurisdiction exists. *Rilley*, 884 N.W.2d at 326. The judicial task is to "determine whether, taking all the factual allegations in the complaint and supporting affidavits as true, the plaintiff has made a prima facie showing of personal jurisdiction." *Id.* This court applies a *de novo* standard of review to a district court's ruling on personal jurisdiction. *Juelich*, 682 N.W.2d at 569.

**B.**

We begin by considering AlphaTec's first argument, which concerns the closely-related-party doctrine. AlphaTec's argument with respect to that doctrine has two parts. First, AlphaTec argues that the doctrine has been expanded too far, is inconsistent with the federal constitutional caselaw concerning personal jurisdiction, and, consequently, "should be rejected." Second, AlphaTec argues in the alternative that Medtronic has not established that AlphaTec is sufficiently closely related so as to be bound by the forum-selection and consent-to-jurisdiction clauses in Lahn's and Tucker's employment agreements with Medtronic.

**1.**

The first part of AlphaTec's argument concerning the closely-related-party doctrine is, in essence, a request that this court overrule our *C.H. Robinson* opinion. This part of AlphaTec's argument is inconsistent with the doctrine of *stare decisis* and this court's respect for its precedent. A rule of appellate procedure provides that the court of appeals may designate an opinion either "precedential," "nonprecedential," or "order opinion."

8

Minn. R. Civ. App. P. 136.01, subd. 1(a). If the court has designated an opinion precedential, the opinion "is binding authority for this court." *State v. Chauvin*, 955 N.W.2d 684, 694-95 (Minn. App. 2021), *rev. denied* (Minn. Mar. 10, 2021). This is so because we abide by "the fundamental principle of *stare decisis*, . . . which means, '[t]o stand by things decided, and not to disturb settled points.'" *Id.* at 690 (alteration in original) (quoting *Black's Law Dictionary* 1626-27 (10th ed. 2014)). As the supreme court has explained, adherence to precedent "promotes stability, order, and predictability in the law." *Fleeger v. Wyeth*, 771 N.W.2d 524, 529 (Minn. 2009). Accordingly, we reject AlphaTec's request that we overrule our opinion in *C.H. Robinson*. AlphaTec's request that *C.H. Robinson* be overruled would be more appropriately directed to the supreme court. *See* Minn. R. Civ. App. P. 117; *see also State v. N.D.S.*, No. A15-1712, 2016 WL 3659184, at *4 (Minn. App. July 11, 2016) (concurring opinion), *rev. granted* (Minn. Sept. 28, 2016), *rev. denied* (Minn. July 18, 2017).

**2.**

AlphaTec contends, in the alternative, that if the closely-related-party doctrine applies, AlphaTec is not sufficiently closely related to the dispute so as to be bound by the forum-selection and consent-to-jurisdiction clauses in Tucker's and Lahn's employment agreements with Medtronic.

In *C.H. Robinson*, we noted that the plaintiff had alleged that the corporate out-of-state defendant "undertook a concerted effort to solicit" the plaintiff's former employees, "with knowledge that the ex-employees were subject to" confidentiality and non-competition agreements (CNAs), which contained forum-selection and consent-to-

9

jurisdiction clauses. 772 N.W.2d at 533, 535. We also noted that the corporate out-of-state defendant and the individual defendants who previously were employed by the plaintiff were "represented by a common attorney" and "share[d] a common interest in asserting that neither improper use of [the plaintiff's confidential] information nor improper solicitation of [the plaintiff's] customers occurred." *Id.* at 535. For those reasons, we concluded that the defendants "who were not parties to the CNAs were sufficiently closely related to the dispute to be bound by them." *Id.*

In this case, the record shows that AlphaTec had knowledge of Lahn's and Tucker's employment agreements when AlphaTec offered employment to them. This cannot be disputed because AlphaTec's general counsel executed an affidavit stating that AlphaTec possessed copies of Lahn's and Tucker's agreements with Medtronic, was aware that the agreements required Lahn and Tucker to remain employed by Medtronic until July 2025, and was aware that the agreements contained forum-selection and consent-to-jurisdiction clauses. The record also shows that AlphaTec, Lahn, and Tucker are represented by the same attorneys in this case. In addition, it is apparent that AlphaTec, Lahn, and Tucker share a common interest in obtaining a judicial decision that Lahn and Tucker are not restrained by their agreements with Medtronic and that AlphaTec, Lahn, and Tucker have no liability on Medtronic's claims. As a result, AlphaTec is just as closely related to the dispute in this case as the out-of-state corporate defendant was to the dispute in *C.H. Robinson*. For that reason, we conclude that AlphaTec is sufficiently closely related to be bound by the forum-selection and consent-to-jurisdiction clauses in Lahn's and Tucker's employment agreements with Medtronic. *See id.*

10

Thus, the district court did not err by concluding that it has personal jurisdiction over AlphaTec under the closely-related-party doctrine. In light of that conclusion, we need not consider AlphaTec's second argument, that personal jurisdiction does not exist under a traditional minimum-contacts analysis.

**Affirmed.**